The STATE of Ohio, Appellee,

v.

PERDUE, Appellant.

[Cite as State v. Perdue, 153 Ohio App.3d 213, 2003-Ohio-3481.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 00 CA 244.

Decided June 24, 2003.

214

Paul J. Gains, Mahoning County Prosecuting Attorney, and Janice T. O'Halloran, Assistant Prosecuting Attorney, for appellee.

John B. Juhasz, for appellant.

---

DeGENARO, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and the oral arguments before this court. Defendant-appellant, John Perdue, appeals from the judgment of the Mahoning County Court of Common Pleas finding him guilty of voluntary manslaughter in violation of R.C. 2903.03(A). Although other issues were raised, the dispositive issue before this court is whether there was sufficient evidence to support Perdue's conviction. Although there is evidence of provocation by the victim, there is no evidence in the record that could support a finding that Perdue was acting under a sudden passion or fit of rage when he shot and killed Raymond Ortiz. Thus, we reverse the trial court's judgment and vacate Perdue's conviction for voluntary manslaughter.

{¶ 2} Perdue was friends with Dwayne and Edwin Thomas. The Thomases lived next to F & N Market on Shehy Street in Youngstown, Ohio. On May 26, 2000, Dwayne, Ortiz, and Ortiz's friend, Jose Castellon were in front of that store. Dwayne and Ortiz were shooting dice in front of the store; however, they soon moved the game to the back of that store because they knew it was illegal to shoot dice and police officers were patrolling the area. Ortiz had had a previous confrontation with some people who lived behind the store, so he asked Dwayne to get his gun. Dwayne retrieved his gun from his house and placed it underneath a chair cushion behind the store. Dwayne's brother Edwin then showed up and played dice as well.

{¶ 3} Perdue was driving along Bruce Street toward Shehy that day when he saw the group playing dice behind the store. He was friends with the Thomases. It appears he also may have known Ortiz. However, he and Castellon were not acquainted. When he saw the group, he parked his car and walked up to them. Although there is some dispute on exactly what happened next, Perdue and Ortiz disagreed over a certain five-dollar bet. Ortiz became enraged and demanded his money from Perdue. When Perdue said that he did not owe Ortiz any money, Ortiz retrieved the gun from underneath the chair and again demanded his money. Eventually, Castellon and Dwayne calmed Ortiz and Ortiz agreed to leave with Castellon. Dwayne testified that his gun was put back underneath the cushion. Perdue testified that Ortiz left with the gun. In any event, after reaching the car, Ortiz decided to return and demand his money. It appears that

when he got behind the store, he began fighting with Perdue. While the two were fighting, Perdue shot Ortiz in the head. Ortiz died as a result of the gunshot wound. After the shot rang out, everyone present ran. Dwayne picked his gun up off the ground before he ran home.

{¶ 4} Perdue was arrested that same day, and the Mahoning County Grand Jury indicted him on one count of murder with a firearm specification. The case proceeded to jury trial. In its instructions to the jury, the trial court included an instruction on the unindicted offense of voluntary manslaughter. When the jury returned its verdict, it found Perdue guilty of voluntary manslaughter but not guilty of the firearm specification. After a sentencing hearing, the trial court sentenced Perdue to a term of eight years' imprisonment.

{¶ 5} We reverse the trial court's judgment and vacate Perdue's conviction because the evidence did not support a conviction on voluntary manslaughter. In order to commit voluntary manslaughter, the defendant must have knowingly killed the victim while acting under a sudden passion or fit of rage. This is different from acting out of fear. In this case, each person present at the time of the shooting testified that Ortiz was enraged. However, no one said that Perdue acted likewise. Instead, the witnesses testified that after Ortiz pulled the gun, either Perdue did not do anything, or the witness could not remember him doing anything. Since no jury could have reasonably found, by a preponderance of the evidence, that Perdue acted under a sudden passion or fit of rage, Perdue's conviction for voluntary manslaughter was supported by insufficient evidence.

{¶ 6} Although Perdue raises four assignments of error, as the third is dispositive of this appeal we will address it first. In it Perdue asserts:

{¶ 7} "Appellant was denied due process and liberties secured by Ohio Const. Art. I, Secs. 1, 2, 10 and 16 when he was convicted of the offense of voluntary manslaughter and there was insufficient evidence to support the conviction."

{¶ 8} Perdue argues that there was no evidence that he acted in a fit of rage or sudden passion when he killed Ortiz, and, therefore, his conviction for voluntary manslaughter is not supported by sufficient evidence. The state argues that the evidence was sufficient to prove its case beyond a reasonable doubt. Perdue made a timely Crim.R. 29 motion for acquittal and, therefore, has preserved this argument for appeal.

{¶ 9} When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational person, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This is a question of law. *State v. Thompkins* (1997), 78

Ohio St.3d 380, 386, 678 N.E.2d 541. Thus, an appellate court should not disturb the conviction unless it concludes that reasonable minds could not reach the conclusion reached by the trier of fact. *Jenks* at 273, 574 N.E.2d 492.

{¶ 10} Perdue was charged with murder but was convicted of voluntary manslaughter. Murder is defined as purposefully causing the death of another. R.C. 2903.02(A). In contrast, a person commits voluntary manslaughter when he, while either under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, knowingly causes the death of another. R.C. 2903.03(A). As the "sudden passion or sudden fit of rage" elements of voluntary manslaughter are mitigating circumstances to a charge of murder, the defendant bears the burden of proving this element by a preponderance of the evidence when charged with murder. *State v. Rhodes* (1992), 63 Ohio St.3d 613, 617–618, 590 N.E.2d 261. In this regard, a defendant's argument that he committed voluntary manslaughter rather than murder is similar to an affirmative defense. Id.

{¶ 11} In order to find a defendant guilty of voluntary manslaughter when the defendant is charged with murder, the jury must find by a preponderance of the evidence that the provocation was sufficient to arouse the passions of an ordinary person and that this particular defendant's passions were aroused. *State v. Mack* (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328; *State v. Shane* (1992), 63 Ohio St.3d 630, 634, 590 N.E.2d 272. Thus, the test has both an objective and a subjective component. *Shane*, 63 Ohio App.3d at 634, 590 N.E.2d 272. When determining whether the subjective portion of this test has been satisfied, "the emotional and mental state of the defendant, as well as the conditions and circumstances that surrounded the incident in question, must be considered." *State v. Prim* (1999), 134 Ohio App.3d 142, 152, 730 N.E.2d 455. Therefore, a defendant must be able to show both of the following factors: "(1) the defendant must have been in fact provoked, and (2) the defendant must not in fact have cooled off during the interval of time between the provocation and the delivery of the fatal blow." *State v. Cornett* (1992), 82 Ohio App.3d 624, 633–634, 612 N.E.2d 1275.

{¶ 12} In his brief, Perdue argues that "there were no facts, no evidence to warrant" a voluntary manslaughter charge. The state argues that the facts of this case are "particularly appropriate" for a voluntary manslaughter charge because mutual combat is one of the "classic voluntary manslaughter situations." The crux of Perdue's case was that he was acting in self-defense. "[E]vidence supporting the privilege of self-defense, i.e., that the defendant feared for his own and other's personal safety, does not constitute sudden passion

or a fit of rage as contemplated by the voluntary manslaughter statute." *State v. Harris* (1998), 129 Ohio App.3d 527, 535, 718 N.E.2d 488. To prove self-defense, a defendant must demonstrate "a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was by the use of force, and that he did not violate any duty to retreat or avoid the danger." *State v. Robinson* (1999), 132 Ohio App.3d 830, 836, 726 N.E.2d 581. In contrast, to prove voluntary manslaughter the defendant must show a state of mind "akin to anger, hatred, jealousy, and/or furious resentment." *Harris*, 129 Ohio App.3d at 535, 718 N.E.2d 488, citing Black's Law Dictionary (6th Ed.1990) 1124, definition of passion. Thus, self-defense requires a showing of fear, while voluntary manslaughter requires a showing of rage. Id. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *Mack*, 82 Ohio St.3d at 201, 694 N.E.2d 1328.

{¶ 13} In this case, there was ample evidence to conclude that Perdue was fearful of Ortiz, but no evidence that he was acting under a sudden passion or fit of rage when he shot Ortiz. At the time of the shooting, five people were present: Perdue, Ortiz, the Thomases, and Castellon. Edwin Thomas testified that the argument between Perdue and Ortiz was loud enough to hear in the front of the store, but that was before Ortiz first pulled the gun out. Edwin did not say that Perdue was upset like Ortiz or that Perdue continued acting upset after Ortiz pulled the gun. Dwayne testified that Ortiz was "real mad" and that he was shocked and scared of Ortiz when Ortiz got the gun. Although he also testified that Ortiz and Perdue were arguing about the bet, he did not say that Perdue was upset like Ortiz or that Perdue continued acting upset after Ortiz pulled the gun. Ortiz's friend, Castellon, testified that Ortiz was screaming-mad but did not say that Perdue was similarly angry. He also said that he could not remember Perdue saying anything after Ortiz pulled the gun. Neither the state nor the defense elicited any testimony from these witnesses regarding Perdue's demeanor at all.

{¶ 14} Perdue consistently testified that he had been scared. At no time did he testify that he had been angry. For instance, when asked how he had felt when Ortiz first pulled the gun from under the chair, Perdue answered, "I'm scared because he got a gun." When asked how he had felt when Ortiz and Castellon left the back of the store, Perdue said, "I am scared that I going to get shot. I don't know what to do. I stood there." When he saw Ortiz returning, his "heart started beating real fast." Finally, Perdue testified that at the moment of the shooting he had felt "shocked. I was scared that he was going to kill me or hurt me. * * * I was scared if I wouldn't have pulled the trigger he probably would have took [the gun] off me and shot me." At his police interview

following the shooting, Perdue told them that he had shot Ortiz because he believed that Ortiz was going to shoot him.

{¶ 15} In short, there is ample evidence demonstrating that Ortiz was enraged, but none which would demonstrate that at the time of the shooting Perdue was similarly enraged. There is no evidence in the record that would support a conclusion that Perdue was actually provoked into a sudden fit of rage or passion by Ortiz's actions.

{¶ 16} The Ohio Supreme Court has stated that when a defendant is charged with murder, the trial court may only instruct the jury on the offense of voluntary manslaughter when the defendant has proved by a preponderance of the evidence that the provocation was sufficient to arouse the passions of an ordinary person and it so provoked this particular defendant. See *Shane*; *Mack*; *Rhodes*. These are two distinct elements and both must be shown. *Shane*. There is more than enough evidence in the record to support a finding that the provocation by the victim was sufficient to arouse the passions of an ordinary person. However, there is no evidence in the record that Perdue was so provoked. Without some evidence supporting that element of voluntary manslaughter, Perdue's conviction for voluntary manslaughter was not supported by sufficient evidence. Perdue's third assignment of error is meritorious.

{¶ 17} For his first, second, and fourth assignments of error, Perdue asserts:

{¶ 18} "Appellant was denied a fair trial when the trial court charged the jury on the offense of voluntary manslaughter."

{¶ 19} "Appellant was denied the effective assistance of counsel when counsel failed to object to the giving of the instruction on the inferior degree offense of voluntary manslaughter."

{¶ 20} "Appellant was denied due process and the liberties secured by Ohio Const. Art. I, Secs. 1, 2, 10 and 16 because his conviction for voluntary manslaughter is against the manifest weight of the evidence."

{¶ 21} Our resolution of assignment of error three renders these remaining assignments of error moot.

{¶ 22} In conclusion, there is no evidence in the record which could support a finding that Perdue shot Ortiz while under the influence of sudden passion or in a fit of rage. Rather, the evidence in the record relating to Perdue's state of mind shows he was scared. Fear alone is insufficient to demonstrate that the defendant was acting under the influence of sudden passion or in a fit of rage.

Thus, the trial court's judgment is reversed, Perdue's conviction for voluntary manslaughter is vacated, and Perdue is discharged.

*Judgment reversed*
*and conviction vacated.*

GENE DONOFRIO, J., concurs.

WAITE, P.J., dissents.

WAITE, Presiding Judge, dissenting.

{¶ 23} I believe that the record contains sufficient evidence to support the elements of the crime of voluntary manslaughter. Furthermore, I do not believe that appellant can challenge the jury's decision on grounds of insufficient evidence of "heat of passion" or mitigating circumstances when the jury's decision benefited him. The evidence showed that appellant committed the elements of the crime of murder, but the jury decided to convict appellant of the inferior-degree crime of voluntary manslaughter. In this appeal, appellant essentially argues that he is guilty of a worse crime than he was convicted of, and for that reason, should be acquitted and released. Based on our prior decision in *State v. Layne* (Mar. 1, 2000), 7th Dist. No. 97 CA 172, 2000 WL 246589, and the vast majority of other states that have decided this issue, appellant is in no position to complain of a jury verdict on the lesser charge of voluntary manslaughter because he was charged with the more severe crime of murder. I find the majority's resolution of this case unsupported and troubling. I must, therefore, dissent from the majority viewpoint.

{¶ 24} The grand jury indicted appellant on the offense of murder. As the majority correctly observes, voluntary manslaughter is an inferior-degree offense to murder and operates to mitigate, rather than justify, a murder charge. *State v. Tyler* (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576. "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph two of the syllabus. The additional mitigating element in voluntary manslaughter is that the defendant was "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force[.]" R.C. 2903.03(A).

{¶ 25} The Ohio Supreme Court has held, in no uncertain terms, that the defendant and not the state has the burden of proving the mitigating factors of voluntary manslaughter:

{¶ 26} "A defendant on trial for murder or aggravated murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder or aggravated murder." *State v. Rhodes* (1992), 63 Ohio St.3d 613, 617, 590 N.E.2d 261; and R.C. 2903.03(A).

{¶ 27} A jury charge on the crime of voluntary manslaughter should state that "[t]he defendant has the burden of proving [the mitigating factors] by a preponderance of the evidence[.]" *Id.* at 615, 590 N.E.2d 261. The trial court is required to give a jury instruction on voluntary manslaughter if the defendant has met his or her burden of production of the mitigating factors. *Rhodes,* 63 Ohio St.3d at 620, 590 N.E.2d 261.

{¶ 28} "When a defendant is being tried for murder, it would be illogical to expect the state to attempt to prove that defendant acted 'under the influence of sudden passion' or 'in a sudden fit of rage'; instead, the state can be expected to try to disprove any such mitigating circumstances in order to prove the crime of murder." *State v. Cuttiford* (1994), 93 Ohio App.3d 546, 560, 639 N.E.2d 472.

{¶ 29} If the state has no burden to prove the mitigating factors of voluntary manslaughter when a defendant is charged with murder, it is axiomatic that the state cannot be accused of committing reversible error if the mitigating factors are not proven. It cannot be error for the state to fail to prove something that it never had a duty to prove in the first instance.

{¶ 30} The vast majority of states that have confronted this problem have concluded that a criminal defendant is in no position to complain of a jury verdict on the lesser charge of voluntary manslaughter when the evidence clearly shows or is undisputed that the defendant committed the elements of the crime of murder. *People v. Lee* (1999), 20 Cal.4th 47, 82 Cal.Rptr.2d 625, 971 P.2d 1001; *State v. Taylor* (Iowa 1990), 452 N.W.2d 605; *Burton v. State* (1973), 254 Ark. 673, 495 S.W.2d 841; *State v. Bradford* (1976), 219 Kan. 336, 548 P.2d 812; *State v. Vestal* (1973), 283 N.C. 249, 195 S.E.2d 297; *State v. Trent* (1927), 122 Ore. 444, 252 P. 975; *State v. Clay* (1982), 249 Ga. 250, 290 S.E.2d 84; *State v. Ellis* (1950), 70 Idaho 417, 219 P.2d 953; *O'Conner v. State* (1980), 272 Ind. 460, 399 N.E.2d 364; *State v. Heald* (Me.1972), 292 A.2d 200; *People v. Buck* (1992), 197 Mich.App. 404, 496 N.W.2d 321; *Hubbard v. State* (Miss.1983), 437 So.2d 430; *Abel v. State* (Okla.Crim.App.1973), 507 P.2d 569; *Commonwealth v. Penn* (1971), 444 Pa. 526, 282 A.2d 233; *State v. Perry* (1907), 78 S.C. 184, 59 S.E. 851; *Jefcoat v. State* (Tex.Crim.App.1982), 644 S.W.2d 719; *Murphy v. People* (1887), 9 Colo. 435, 13 P. 528; *Williams v. State* (1917), 73 Fla. 1198, 75 So. 785; *State v.*

*Nibarger* (Mo.1965), 391 S.W.2d 846; see other jurisdictions listed in Annotation, Propriety of Manslaughter Conviction in Prosecution for Murder, Absent Proof of Necessary Elements of Manslaughter (1983), 19 A.L.R.4th 861.

{¶ 31} This court acknowledged and accepted this majority viewpoint in *Layne,* supra, 7th Dist. No. 97 CA 172: "[A] defendant cannot complain that the outcome of the case was more favorable to him than the evidence warranted; in other words, a defendant cannot avail himself of an error in his favor which[ ] acquit[s] him of any degree of homicide." Id. at 7.

{¶ 32} Appellant has not disputed the fact that he intentionally took the life of Raymond Ortiz. The jury apparently did not believe the self-defense theory that appellant presented at trial. Therefore, we are left with a defendant who has undeniably committed murder but is upset with the jury for convicting him of a lesser crime. In addition, he now seeks to escape punishment for any crime because, following appellant's argument, the jury was more lenient to him than the evidence supported. To underscore, appellant is in no position to complain of a conviction on a lesser crime when the record fully supports that he committed the greater crime of murder.

{¶ 33} Furthermore, I believe that the record contains enough of a basis to support a conclusion that appellant acted in a heat of rage provoked by the victim. The evidence at trial demonstrated that Raymond Ortiz and appellant, as well as several other young men, were playing dice just moments before the shooting. A confrontation developed when Ortiz claimed that appellant owed him five dollars on a side bet. The argument became heated and Ortiz's behavior turned increasingly aggressive. Ortiz berated appellant, spewed profanity at him, threatened him, and, at one point, menaced appellant with a gun he pulled from under an adjacent chair cushion. By all accounts, Ortiz's behavior before appellant shot him was extremely provocative.

{¶ 34} Nevertheless, according to the prosecution and several eyewitnesses, Ortiz was unarmed when appellant shot him, not because appellant disarmed him, but because prior to the shooting Ortiz had returned the gun to its hiding place. Moreover, the prosecution maintained that the physical evidence, which indicated that the victim was shot at some distance, contradicted appellant's claim that he took the gun from Ortiz in a struggle and shot him at close range in self-defense.

{¶ 35} Because the evidence at trial to some extent supported both the prosecution and defense theories of the occurrence, the trial court instructed the jury that it could find appellant guilty of murder or it could acquit him in the event it found that he killed Ortiz in self-defense. The record reflects that there was no objection to this instruction, and appellant never proposed any alternative jury instructions. On the contrary, when the trial court asked counsel whether

he had "any additions, corrections or deletions" to the instructions that were ultimately given the jury, counsel indicated that they "sound[ed] good."

{¶ 36} After deliberating for several hours, the jury indicated that it had reached an impasse on the murder charge. The court responded that it should determine whether there was sufficient evidence to mitigate the offense to voluntary manslaughter. The jury ultimately deliberated for a full day and a half before finding appellant guilty of voluntary manslaughter but not guilty of the attendant firearm specification.

{¶ 37} Under Crim.R. 30(A), a party is barred from raising as error the decision to give or not give instructions unless that party objects to them before the jury retires to deliberate. Appellant would like us to find that the voluntary manslaughter instruction was plain error. Plain error is characterized as "obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." *State v. Craft* (1977), 52 Ohio App.2d 1, 7, 6 O.O.3d 1, 367 N.E.2d 1221, at paragraph one of syllabus. A plain error must be not only obvious but clearly outcome-determinative. *State v. Yarbrough* (2002), 95 Ohio St.3d 227, 245, 767 N.E.2d 216. Plain error should be found only in exceptional circumstances to prevent a manifest miscarriage of justice.

{¶ 38} The instant matter does not present the potential miscarriage of justice that the plain-error doctrine contemplates. As noted above, our review here is limited to an examination for plain error because trial counsel did not object to the instruction. The majority opinion does not address or otherwise confront the fact that trial counsel's purported "failure" to object to this instruction may well have been a decision predicated on sound trial strategy. Absent evidence to the contrary, the law mandates that we presume defense counsel's decisions concerning jury instructions are matters of trial strategy, which are not subject to plain-error analysis on appeal. See *State v. Morrow*, 2d Dist. No. 2002–CA–37, 2002-Ohio-6527, 2002 WL 31682098, citing *State v. Clayton* (1980), 62 Ohio St.2d 45, 47, 16 O.O.3d 35, 402 N.E.2d 1189; and *State v. Harris* (1998), 129 Ohio App.3d 527, 533, 718 N.E.2d 488. The obvious trial strategy was to allow the jury to consider the lesser crime of voluntary manslaughter, whether or not the evidence supported that lesser crime.

{¶ 39} Appellant maintains that the instructions given confused the jury, characterizing his conviction for voluntary manslaughter as "nonsensical" in light of the fact that the jury refused to convict on the attendant firearm specification. Appellant also complains that the instructions unfairly forced appellant to prove both self-defense and the mitigating elements of voluntary manslaughter. Appellant is mistaken on both counts.

{¶ 40} The jury's verdict in this case is hardly nonsensical or indicative of confusion. It is well settled that when a principal charge in an indictment is not dependent on the attendant specification, a conviction on the underlying charge along with an acquittal on the specification does not invalidate the conviction. *State v. Davis*, 6th Dist. No. L–00–1143, 2002-Ohio-3046, 2002 WL 1370646, citing *State v. Perryman* (1976), 49 Ohio St.2d 14, 3 O.O.3d 8, 358 N.E.2d 1040, paragraph three of the syllabus; and *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112, paragraph one of the syllabus. Accordingly, in *Davis*, where the jury similarly failed to convict the defendant on the firearm specifications even though it convicted him of murder in two fatal shootings, the reviewing court upheld the murder convictions. *Davis*, supra. Such a principle recognizes that when jury verdicts appear inconsistent there is no more reason to attribute such inconsistencies to confusion than to basic leniency. Given the mitigating factors present in the instant case, leniency may well have motivated the jury's decision to enter a partial acquittal.

{¶ 41} Further, despite appellant's suggestion to the contrary, there is no blanket rule holding the defenses of voluntary manslaughter and self-defense to be inconsistent or contradictory. See, e.g., *State v. VanSickle* (July 20, 1995), 10th Dist. No. 94APA12–1728, 1995 WL 432424 (no reversible error when jury found defendant guilty of voluntary manslaughter notwithstanding the defendant's account that she acted in self-defense and the trial court's finding that she was a "battered woman"). Although it is certainly foreseeable that some factual scenarios will render the simultaneous presentations of such defenses incompatible, there was certainly no legal or factual inconsistency present here.

{¶ 42} Appellant also argues that, notwithstanding trial counsel's failure to object to the instructions given, "no reasonable jury could find that the provocation was adequate." This statement is completely belied by the facts of the record. The one thing on which the witnesses in this case did agree was the provocative nature of the victim's behavior. Ultimately, everyone associated with this case, except appellant's counsel, agreed that the victim provoked this shooting. At sentencing, the prosecution acknowledged that "the victim did provoke the offense * * * the victim came back. He was leaving, but he did come back and did want to fight Mr. Perdue." The trial court noted as well that such evidence of provocation was "clear" and that "he would in all likelihood still be alive, but for whatever reason he came back around that corner again to confront [appellant]." The record demonstrates that the victim yelled at appellant, physically and verbally threatened appellant, struck appellant, and at one point he waved a gun at appellant. By giving the voluntary manslaughter instruction, the trial court allowed the jury to determine whether the victim's behavior caused appellant to shoot him in a sudden fit of passion or rage, or

whether the victim made appellant so fearful of an attack that he was justified in using deadly force.

{¶ 43} A review of the trial record further suggests that the majority here has adopted appellant's account of the incident over contradictory versions offered by eyewitnesses. In so doing, the majority substitutes its view of the evidence for the trial court's. The trial court, which must initially decide whether the evidence warrants a particular jury instruction, plainly concluded that the jury should receive a voluntary manslaughter instruction. Given Ortiz's provocative behavior and the contradictory evidence surrounding the shooting, such a decision was not clearly erroneous. Confrontations, such as the one before us, which involve assault and battery or mutual combat, are quintessentially appropriate for voluntary manslaughter instructions. See, e.g., *State v. Thomas* (Mar. 26, 1996), 10th Dist. No. 95APA08–984, 1996 WL 145457; *State v. Torres,* 3d Dist. No. 4–01–06, 2002-Ohio-1203, 2002 WL 418392.

{¶ 44} It appears that the jury, whose exclusive role it is to hear and weigh the evidence, agreed with the trial court's assessment of Ortiz's behavior, and also found parts of appellant's account of the incident to be incredible. Possibly the jury decided that despite appellant's contention that he was afraid of Ortiz, it was more reasonable to believe that he was extremely angry with Ortiz. Possibly the jury chose to disbelieve appellant's testimony that Ortiz was armed or that appellant managed to quickly disarm him. Possibly the jury reasoned that if appellant managed to disarm Ortiz as quickly and easily as he claimed then there was no self-defense justification for shooting Ortiz but decided that the crime was still mitigated by the provocative and mutually combative circumstances. Perhaps the jury was just being lenient. While this is pure speculation, the majority speculates that quite a different thought process occurred in the jury room. Our system of justice prohibits us from finding reversible error through a reviewing court's speculative inquiry into the jury's deliberative process. See *Tanner v. United States* (1987), 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90.

{¶ 45} Our role in reviewing for plain error does not allow us to indulge in an in-depth analysis of a jury's deliberations. Whatever the basis or reasoning behind the jury's verdict, there was certainly enough evidence of record to justify the trial court's decision to give the voluntary manslaughter instruction.

{¶ 46} Appellant clearly benefited by failing to object to the trial court's instruction on voluntary manslaughter and by the jury verdict on that lesser crime rather than the crime of murder. Appellant is in no position to complain of the error in his favor, and I would overrule appellant's assignments of error on that basis, in keeping with the vast majority of other jurisdictions in this country. In addition, the record is not so devoid of evidence of serious provocation as to

undermine the jury instruction on voluntary manslaughter. Accordingly, I dissent and would affirm this matter in all respects.