DECISION.
{¶ 1} Andre Davis appeals his conviction for voluntary manslaughter and for having a weapon under a disability. Because we conclude that Davis's assignments of error do not have merit, we affirm the judgment of the trial court.
 Background {¶ 2} On November 8, 2003, Davis went to Checquers nightclub in Springdale, Ohio. Edmund Scott was also at the club. That night, Davis and Scott had a confrontation outside the bar. According to witnesses, the two men began to argue. Scott then hit Davis over the head with a gun. Davis pulled a gun from his pocket and fired it twice. Scott was hit with two bullets and later died from his injuries.
 {¶ 3} Davis was indicted for murder in violation of R.C.2903.02(A), with a gun specification, and for having a weapon under a disability in violation of R.C. 2923.13(A)(3). The case was tried before a jury. At the conclusion of the trial, the jury found Davis not guilty of murder, but guilty of voluntary manslaughter and of having a weapon under a disability.
 Expert Witness {¶ 4} In his first assignment of error, Davis claims that the trial court erred when it refused to allow police officer Michael Gardner to testify as an expert on his behalf. At trial, Davis testified that there had been an ongoing dispute between a group from Evanston, where Davis lived, and a group from Madisonville, where Scott lived. He testified that he had had a previous encounter with Scott, during which Scott had shot at him while Davis was in his mother's car. According to Davis, he had purchased a gun to protect himself. Davis testified that, on November 8, he had believed that Scott was going to kill him, and that he had fired his gun as he was running away from Scott. Davis sought to have Gardner bolster his self-defense claim by explaining that Davis had been acting in self-defense, even though Scott had been shot in the back.
 {¶ 5} A witness who is qualified as an expert and whose testimony is based on reliable scientific, technical, or other specialized information may testify as an expert about "matters beyond the knowledge or experience possessed by lay people."[1] We review a trial court's decision to exclude evidence under an abuse-of-discretion standard.[2]
 {¶ 6} Here, the trial court concluded that the decision about whether Davis had acted reasonably was the jury's. We agree. During his testimony, Davis stated that Scott had had a gun on him, and that Davis had had nowhere to go to escape Scott. The jury was capable of determining whether Davis had acted reasonably without the aid of Gardner's testimony. While the admission of Gardner's testimony may not have risen to the level of plain error, as argued by the state, the trial court did not abuse its discretion in refusing to admit the testimony. The first assignment of error is without merit.
 Voluntary Manslaughter {¶ 7} Davis's next two assignments of error relate to the voluntary-manslaughter conviction. Davis's second assignment of error is framed in terms of the trial court's failure to apply the law of State v. Perdue,[3] which was decided by the Seventh Appellate District. We recast this assignment to reflect more appropriately the issues raised by Davis, that is, whether the trial court erred when it overruled his Crim.R. 29 motion, and whether the trial court erred when it refused to include a requested jury instruction. The third assignment of error is that the trial court erred when it instructed the jury on the unindicted offense of voluntary manslaughter. We consider the assignments of error together.
 {¶ 8} Davis argues that the trial court erred in denying his Crim.R. 29 motion because the state did not present sufficient evidence that he had acted under a sudden passion or a fit of rage. Davis contends that, at best, the evidence showed that he had acted in fear, and that, as the Seventh Appellate District held in Perdue, evidence of his fear alone was not sufficient to support a conviction for voluntary manslaughter.[4]
 {¶ 9} Davis's motion was raised prior to the jury instructions. His counsel's arguments were directed to the murder charge. Because the trial court had not yet announced its decision to include voluntary manslaughter in the charge to the jury, the issue was not raised in Davis's Crim.R. 29 motion. The trial court's denial of the motion with respect to the murder charge is moot because the jury found Davis not guilty of that offense.
 {¶ 10} Even if Davis had made a Crim.R. 29 motion with respect to voluntary manslaughter, the motion would have been properly denied by the trial court because the state had presented sufficient evidence to sustain a conviction for voluntary manslaughter.
 {¶ 11} A person who, "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, * * * knowingly cause[s] the death of another * * *" is guilty of voluntary manslaughter.[5] Witnesses testified that Davis and Scott had had a heated argument before Scott was shot, and that Scott had hit Davis over the head with his gun with enough force to break the gun. Scott's action constituted serious provocation that could have reasonably incited Davis into using deadly force.
 {¶ 12} Our conclusion that the state presented sufficient evidence of voluntary manslaughter to survive a Crim.R. 29 challenge leads us to conclude also that the trial court properly instructed the jury on the offense.
 {¶ 13} Davis argues that he could not have been convicted of an offense for which he had not been indicted. But "[p]ursuant to R.C. 2945.74 and Crim.R. 31(C), a jury may consider three groups of lesser offenses on which, when supported by the evidence at trial, it must be charged and on which it may reach a verdict: (1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses."[6] Voluntary manslaughter is an offense of inferior degree to murder.[7] The court was required to give an instruction on voluntary manslaughter because the state presented sufficient evidence so that the jury could have reasonably acquitted Davis of murder and found him guilty of voluntary manslaughter.[8]
 {¶ 14} Davis next contends that even if the trial court correctly decided to charge the jury on voluntary manslaughter, it improperly refused to include a statement of the law that he had requested.
 {¶ 15} The trial court's voluntary-manslaughter instructions included the following language: "An act committed while under sudden passion or in a sudden fit of rage, brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite a person into using deadly force[,] is an act done in the heat of blood, without time to reflect or for passions to cool. In determining whether the defendant, Andre Davis, was under the influence of sudden passion or sudden fit of rage, either of which was brought on by serious provocation, you should consider any credible evidence, whether offered by the [s]tate or the defendant." Davis requested that, at the end of this language, the trial court state that "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or sudden fit of rage." The trial court denied his request.
 {¶ 16} We review a trial court's refusal to include a requested jury instruction under an abuse-of-discretion standard.[9] A requested jury instruction "need not be given where the general charge includes and covers the correct essential elements of the requested special instruction."[10] Davis's counsel wanted it to be clear that the jury could not find him guilty of voluntary manslaughter merely because he had acted out of fear. The trial court's instruction clearly defined what constituted an act done under sudden passion or fit of rage. Therefore, an additional instruction about fear was unnecessary. We conclude that the trial court did not abuse its discretion in refusing to give the requested instruction.
 {¶ 17} The second assignment of error, as recast, and the third assignment of error are overruled.
 Voir Dire {¶ 18} In his final assignment of error, Davis asserts that the trial court erred when it allowed the state to use its peremptory challenges to strike three African-American jurors.
 {¶ 19} The use of peremptory challenges to discriminate based on race is prohibited by the Equal Protection Clause of the Fourteenth Amendment.[11] In State v. White, the Ohio Supreme Court discussed the three-step procedure for evaluatingBatson challenges.[12] "First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination."[13] "A trial court's finding of no discriminatory intent will not be reversed on appeal absent a determination that it was clearly erroneous."[14]
 {¶ 20} The state exercised its peremptory challenges to exclude potential jurors Napier, Griggs, and Berry. Upon defense counsel's prima facie showing of discrimination, the prosecutor stated his reasons for exercising his challenges. With respect to Napier, he stated, "[I] think he and [defense counsel] had a very good rapport. He was vague about a lot of his answers. First he said he worked at UPS, and he had been there a very short time, I think he said a week. And then the more you got into it, he said he'd been going to college, which he never disclosed. And then he said that he quit college because he owed money. It seemed like he was not being forthcoming with his answers." As to Griggs, the prosecutor sought to dismiss her because she had been to Checquers, which was where the incident had taken place. The prosecutor also cited the rapport that he believed that defense counsel had established with Griggs. Finally, the prosecutor exercised a peremptory challenge to exclude Berry, stating that she was very young, that he believed she was immature, and that she had a lot of ties to Evanston, where Davis and his friends lived.
 {¶ 21} A prosecutor's reasons for exercising a peremptory challenge "need not rise to the level of justifying exercise of a challenge for cause."[15] Rather, the second step in theBatson inquiry merely requires that the explanation be race-neutral. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."[16] None of the explanations given by the prosecutor in this case revealed a discriminatory intent.
 {¶ 22} Upon the prosecutor's race-neutral explanation of his challenges to Napier, Griggs, and Berry, the inquiry moved to the third step — the trial court's determination of whether discriminatory intent had been proved. The burden of proving discriminatory intent fell upon Davis.[17] And the trial court was in the best position to evaluate the exchange between the potential jurors and defense counsel and to determine whether the prosecutor's reasons were plausible or were fabricated to hide discriminatory intent. We conclude that the trial court's determination that there was no discriminatory intent was not clearly erroneous. The fourth assignment of error is overruled.
 {¶ 23} Because Davis's assignments of error do not have merit, we affirm the judgment of the trial court.
Judgment affirmed.
Doan, P.J., and Hendon, J., concur.
[1] Evid.R. 702.
[2] State v. Withers (1975), 44 Ohio St.2d 53, 55,337 N.E.2d 780, citing State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126.
[3] 153 Ohio App.3d 213, 2003-Ohio-3481, 792 N.E.2d 747.
[4] Id. at 217-218.
[5] R.C. 2903.03(A).
[6] State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus.
[7] State v. Tyler (1990), 50 Ohio St.3d 24, 36,553 N.E.2d 576.
[8] Deem, supra, at 211.
[9] State v. Wolons (1989), 44 Ohio St.3d 64,541 N.E.2d 443.
[10] State v. Corkran (1965), 3 Ohio St.2d 125,209 N.E.2d 437, paragraph three of the syllabus.
[11] Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712.
[12] 85 Ohio St.3d 433, 1999-Ohio-281, 709 N.E.2d 140. See, also, State v. Jordan, 1st Dist. No. C-040897, 2006-Ohio-2759.
[13] White, supra, at 436, citing Batson, supra, at 96-98,Purkett v. Elem (1995), 514 U.S. 765, 767-768, 115 S.Ct. 1769, and State v. Hernandez (1992), 63 Ohio St.3d 577, 582,589 N.E.2d 1310.
[14] State v. Johnson, 88 Ohio St.3d 95, 116, 2000-Ohio-276,723 N.E.2d 1054.
[15] Batson, supra, at 97.
[16] Hernandez v. New York (1991), 500 U.S. 352, 360,111 S.Ct. 1859.
[17] Purkett, supra, at 768.