{¶ 122} The majority concludes that the trial court erred by not instructing the jury on voluntary manslaughter, an inferior degree of murder, the crime for which Warner was convicted. Based on this conclusion, the majority determines the trial court further erred by not allowing Warner's expert to testify regarding the effect purported post traumatic stress disorder may have had on his mental state. Since an instruction on voluntary manslaughter is not warranted in this case, I respectfully dissent from both conclusions and would affirm Warner's conviction. *Page 28 
 {¶ 123} Murder is defined as "purposely caus[ing] the death of another." R.C. 2903.02(A). Voluntary manslaughter is defined as "knowingly caus[ing] the death of another" while "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C.2903.03(A). The Ohio Supreme Court has explained that the provocation must be "reasonably sufficient to incite the defendant to use deadly force. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." State v. Shane (1992), 63 Ohio St.3d 630, 635
(emphasis sic) (citation omitted).
 {¶ 124} "Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant an instruction." Id. at paragraph one of the syllabus.
 {¶ 125} It is not the law of Ohio, and has never been the law, that an instruction on voluntary manslaughter must be given "whenever there is `some evidence' that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute." Id. at 632.
 {¶ 126} In the present case, there is no evidence that Warner acted "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.03(A).
 {¶ 127} Warner's testimony, in relevant part, is as follows: *Page 29 
 {¶ 128} Warner: "[Carol] came into the kitchen * * * and I was still sitting * * * in the chair * * * and she called me a couple of names and tell[s] me I'm a damn liar and stuff like this and she reached and grabbed a skillet and she klunked me with it. * * * The skillet was a little * * * cast iron skillet * * * about a six, eight inch cast iron skillet. * * * [A]fter she struck me with the skillet * * * I got up and I rushed her and so she went backwards and she swung it again and when she swung it the second time it hit me across the shoulder * * * and * * * the skillet came out of her hand."
 {¶ 129} * * *
 {¶ 130} Counsel: "And what is the next thing that occurs?"
 {¶ 131} Warner: "Next thing I picked up the skillet."
 {¶ 132} Counsel: "What do you do with it?"
 {¶ 133} Warner: "Hit her with it."
 {¶ 134} * * *
 {¶ 135} Counsel: "And where did you hit her with the skillet?"
 {¶ 136} Warner: "It was right around * * * the head someplace."
 {¶ 137} * * *
 {¶ 138} Counsel: "How many times did you hit her with the skillet, if you hit her more than once?"
 {¶ 139} Warner: "Maybe twice, maybe three. I'm not sure. * * * And then she * * * went to get this knife. * * * I dropped the skillet. * * * I rushed over there * * * to try to keep her from getting the knife. * * * And I * * * rushed over there and bear hugged her."
 {¶ 140} Counsel: "What do you mean, you bear hugged her?" *Page 30 
 {¶ 141} Warner: "You know, contact, facing her, you know."
 {¶ 142} Counsel: "So what happened to the knife?"
 {¶ 143} Warner: "We struggled there with the knife, * * * and * * * she's a very strong lady, you know, and we [were] struggling there and somehow, you know, I got control."
 {¶ 144} * * *
 {¶ 145} Counsel: "Now you heard the coroner in here testify she had multiple cuts on her, she had abrasions and contusions and she had one fatal stab wound. Do you recall doing all those things?"
 {¶ 146} Warner: "The only thing I could remember is the stab wound. The other stuff, you know, probably was just incidental, had to be incidental, you know, the struggle because we struggled there for that control of the knife."
 {¶ 147} Counsel: "Was it your intent to hurt her?"
 {¶ 148} Warner: "No, no, it was not."
 {¶ 149} Counsel: "Were you trying to cause her death?"
 {¶ 150} Warner: "No, I was trying to protect myself."
 {¶ 151} * * *
 {¶ 152} Counsel: "Are you the one that triggered this episode?"
 {¶ 153} Warner: "No, I don't think, no, I was not."
 {¶ 154} Counsel: "Are you the one that threw the first blow?"
 {¶ 155} Warner: "No, I did not."
 {¶ 156} Counsel: "Did you go after her?" *Page 31 
 {¶ 157} Warner: "No. I was merely trying to defend me, myself, you know, from being hurt any worse than what I was. And I wanted to get out of that house, that is what I wanted."
 {¶ 158} * * *
 {¶ 159} Counsel: "So you * * * used two separate weapons to beat her and then stab her to kill her. How is that being provoked?"
 {¶ 160} Warner: "I was trying to avoid a confrontation with her. That is all I can tell you."
 {¶ 161} * * *
 {¶ 162} Counsel: "When you were struggling with her for this knife were you keeping track of the blows."
 {¶ 163} Warner: "No, I was not."
 {¶ 164} Counsel: "What were you trying to do?"
 {¶ 165} Warner: "Whatever means was necessary to make her release it, you know. I tried to get the knife and —"
 {¶ 166} Counsel: "Did you want to be stabbed?"
 {¶ 167} Warner: "No, I did not."
 {¶ 168} Counsel: "Did you want to be cut?"
 {¶ 169} Warner: "No, I did not. If she would have allowed me I would have left the house, I would — I just wanted to get out of there, you know. Just basically what I wanted to do."
 {¶ 170} Counsel: "Did you start arguing when you walked in that door that Sunday morning?" *Page 32 
 {¶ 171} Warner: "No, I didn't."
 {¶ 172} There is no suggestion in the trial testimony that Warner acted under the influence of sudden passion or in a sudden fit of rage occasioned by serious provocation. At most, Warner's testimony furthers an assertion that he may have acted in self-defense. This is the interpretation adopted by the trial judge. This is the plain meaning of Warner's testimony. State v. Collins (1994), 97 Ohio App.3d 438, 446
(noting that defendant's "own testimony did not support and completely undermined any claim that his actions were in fact incited by serious provocation," as defendant "repeatedly testified he tried to avoidany fight with the victim and acted solely in self-defense") (emphasis sic); State v. Madden, 10th Dist. No. 05AP-149, 2006-Ohio-4224, at ¶ 26 ("[defendant's `claim that he feared for his own safety did not constitute sudden passion or rage' under the statute") (citation omitted).
 {¶ 173} Although Warner did not testify that he was provoked so as to lose control of his passions, the majority contrives what it considers to be sufficient evidence of voluntary manslaughter. The majority writes that Warner testified that he was "upset" and "stressed" and the adrenaline was "flowing." These feelings are not probative evidence that Warner killed his wife in a sudden passion or rage. Nor are these the sort of passions that would drive an ordinary person to use deadly force. Moreover, Warner testified that these were his feelingsafter he had killed Carol.
 {¶ 174} Counsel: "When it was all over, what do you do?"
 {¶ 175} Warner: "I mean, I was stressed about, you know — just upset, you know. I didn't know what to do, you know. I paced around, paced around. * * * The adrenaline just flowing." *Page 33 
 {¶ 176} The majority also misrepresents Warner's testimony, erroneously stating that Warner claimed to be "still" stressed. Warner only testified to being stressed afterwards.
 {¶ 177} It is also significant that Warner did not expressly testify what he was "stressed" or "upset" about at this point. The majority merely conjectures he is describing his emotional state during the killing.
 {¶ 178} Elsewhere in the testimony, Warner testified that he was "upset" that Carol had taken his keys, had taken his car, and had a boyfriend. In each instance, Warner claimed to be "upset."[46]
Contrary to the majority's opinion, none of this testimony supports an instruction on voluntary manslaughter because Warner had learned that his wife took his keys, took his car, and had a boyfriend the day beforeshe was killed.
 {¶ 179} "[A]ny passion or rage felt by an offender who has had time to cool off does not qualify for `sudden passion' or `sudden fit of rage' under the current voluntary manslaughter statute. The case-law dealing with the `cooling off period indicates that it is a very short time span." State v. Kanner, 7th Dist. No. 04 MO 10, 2006-Ohio-3485, at ¶ 28. See State v. Huertas (1990), 51 Ohio St.3d 22, 32 (offender "had more than sufficient time to cool down after the telephone conversation," in which he was informed that someone was sleeping with his girlfriend, and the time of the murder that same evening); State v.Townsend, 7th Dist. No. 04 MA 110, 2005-Ohio-6945, at ¶¶ 2-7, 76 (the time it took for the offender to leave the bar and return with a weapon was a sufficient cooling off period); State v. Byerly, 5th Dist. No. 02-CA-81, *Page 34 2003-Ohio-6911, at ¶ 36 (the time it took the offender to walk half a mile to reach the victim is a sufficient cooling off period); State v.Manley, 3rd Dist. No. 1-01-159, 2002-Ohio-5582, at ¶ 13 (an hour and a half between the time of an altercation and the killing is a sufficient cooling off period).
 {¶ 180} In the present case, Warner learned that his wife had taken his keys and his car and had gone to see her boyfriend on Saturday afternoon. Warner was driven home by his daughter who sat with him for a few hours. Later that evening Carol arrived home and they argued. Warner went to the police and spent the night in a hotel room. Around noon, the next day, he returned home where the final confrontation took place. In addition to the fact that Warner never testified that these actions by Carol provoked him to a sudden passion or rage, an excessive amount of time had elapsed between these events and the killing. Thus, they provide no support for a jury instruction on voluntary manslaughter.
 {¶ 181} The only possible provocation to support a voluntary manslaughter charge is the "mutual combat" engaged in by Warner and Carol. The majority notes that "mutual combat" is a "classic voluntary manslaughter situation" and it is "reasonable" for any person who has to defend himself "to be acting under the influence of a sudden passion or in a fit of rage." Again, this is not the law.
 {¶ 182} The Ohio Supreme Court has held that "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." State v. Mack,82 Ohio St.3d 198, 201, 1998-Ohio-375. "Evidence supporting the privilege of self-defense, i.e., that the defendant feared for his own and other's personal safety, does not constitute sudden passion or a fit of rage as contemplated by *Page 35 
the voluntary manslaughter statute." State v. Harris (1998),129 Ohio App.3d 527, 535; accord State v. Perdue, 153 Ohio App.3d 213,2003-Ohio-3481, at ¶ 12. "While self-defense requires a showing of fear, voluntary manslaughter requires a showing of rage, with emotions of `anger, hatred, jealously, and/or furious resentment'." State v.Levett, 1st Dist. No. C-040537, 2006-Ohio-2222, at ¶ 29 (citations omitted). Thus, even where the victim had a gun, the offender was not entitled to a voluntary manslaughter instruction in the absence of evidence that he "was actually provoked into a sudden fit of rage or passion." Perdue, 2003-Ohio-3481, at ¶ 15.
 {¶ 183} As Warner's trial testimony demonstrates, his actions were not motivated by rage, anger, jealously, fury, or resentment. He claims he wanted to protect himself. He claims he wanted to leave the house. The bruises and cuts on Carol's body were, in Warner's words, "incidental," not the product of passion or fury.
 {¶ 184} Thus, there is a complete lack of evidence in the present case that Carol did anything constituting extreme provocation or that Warner was under the influence of a sudden passion or rage. The trial court's conclusion, that Warner had not presented sufficient evidence to warrant a voluntary manslaughter instruction, is the only reasonable one. For the same reason, Warner was not entitled to an instruction on aggravated assault. Moreover, it was not error to exclude the proffered testimony regarding post traumatic stress disorder, since this evidence would only have been relevant to Warner's subjective state of mind, an issue that is irrelevant where a manslaughter instruction is not given.Shane, 63 Ohio St.3d at 634 (where "the objective portion of the consideration is not met, * * * no subsequent inquiry into the *Page 36 
subjective portion, when the defendant's own situation would be at issue, should be conducted").
 {¶ 185} The judgment of the trial court should be affirmed.
[46] It is interesting to note that Warner was asked on four separate occasions if these things made him "angry." In each reply, Warner said he was "upset." *Page 1