OPINION
{¶ 1} Defendant-appellant LaTawon Townsend appeals from his conviction of aggravated murder with a firearm specification that was entered in the Mahoning County Common Pleas Court. He urges that there was insufficient evidence to find purpose and prior calculation and design and claims that the verdict was against the weight of the evidence on these two elements. He contends that the court erroneously admitted a letter he purportedly wrote from jail. He also argues that the court should have instructed on voluntary intoxication, voluntary manslaughter and involuntary manslaughter. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} Near midnight on January 11, 2002, appellant entered the TNT Lounge on Steel Street on the west side of Youngstown. He was with Jose Rivera and Stanford Belcher. A fight soon broke out on the dance floor involving appellant and Rivera against other bar patrons. A bouncer physically removed Rivera from the bar.
 {¶ 3} Once outside, both appellant and Rivera made threatening statements towards the bar and warned that they would be back. For instance, Rivera testified that appellant yelled, "ya'll don't know who you're fucking with, * * * I'll light this place up." (Tr. 306-307). The bar manager testified that they both screamed things like, "I'm gonna riddle this place. I'm gonna light this place up. * * * everybody in here is dead. * * * Fuck this. Get that bouncer outta here. I'm lightin' this place up." (Tr. 377). Appellant conceded that he made these types of threats. (Tr. 605).
 {¶ 4} Due to the intensity of the threats, the bar manager sent the involved bouncer home and called the police. The police took a report and left. In the meantime, appellant drove at an extremely high rate of speed to his house on the east side of town. He told Rivera and Belcher to get in his other car. He then went into his house and retrieved weapons. He gave a gun to Belcher and offered one to Rivera; however, Rivera had his own .40 caliber handgun. (Tr. 308). Appellant had a chrome.380 caliber handgun with a laser sight accessory. (Tr. 313, 607-608).
 {¶ 5} Appellant drove back across town to the bar. Appellant entered first with Rivera following him; Belcher apparently fled the scene after appellant entered. The bar manager noticed appellant entering with gun drawn. He grabbed appellant's hand and tried to twist the gun away, but Rivera pushed him down. Appellant pointed the gun at his chest and then walked on. (Tr. 387).
 {¶ 6} The crowd noticed the gunmen and many started fleeing. Appellant walked through the bar waving his gun around and pointing it at various patrons, pausing to focus the red laser on people's chests and heads. He started towards the kitchen where some women had fled and were hiding behind a large cooler.
 {¶ 7} Angela Loibl ran into the kitchen with appellant close behind; she was only partially hidden when he entered. The bar manager's mother heard appellant say, "Bitch, I'm gonna motherfucking kill you." (Tr. 455-456). He then fired a shot which hit Angela in the face. She died in the hospital of a gunshot wound to the brain.
 {¶ 8} Appellant was described as "calm as anything" as he walked out of the bar. (Tr. 457). On his way out, he was overheard declaring, "East side up," and "I ain't no punk." (Tr. 423).
 {¶ 9} Two sisters who were at the bar that night appeared at the police station the next day to advise that they knew both gunmen. Appellant and Rivera were indicted for aggravated murder with a firearm specification. Rivera turned himself in within days of the shooting. Appellant was not found until three months later.
 {¶ 10} Rivera pled guilty to involuntary manslaughter and testified against appellant. Appellant's trial began on May 5, 2004. Appellant testified that he only intended to scare the patrons and did not mean to pull the trigger. The jury found him guilty as charged. He was sentenced to twenty years to life plus three years on the firearm specification.
 {¶ 11} After prompting from this court due to the untimeliness of appellant's brief, original appellate counsel filed a brief with two assignments of error. However, he asked that we replace him with new counsel who could supplement his brief due to family issues which harmed his ability to adequately review the case. Thus, we appointed new counsel, who supplemented the original brief with five more assignments of error. We shall address the assignments of error in their order of presentation with the exception of the following subassignment which shall be analyzed first.
 FIRST SUBASSIGNMENT IN SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER FOUR {¶ 12} Appellant's fourth supplemental assignment of error provides in pertinent part:
 {¶ 13} "DEFENDANT/APPELLANT'S CONVICTION IS BASED UPON EVIDENCE NOT LEGALLY SUFFICIENT TO SUSTAIN A VERDICT AS A MATTER OF LAW * * * AS TO THE ELEMENT OF PURPOSE WITHIN THE CHARGE OF AGGRAVATED MURDER."
 {¶ 14} Here, appellant argues that there was insufficient evidence to establish that he killed Angela purposely. Sufficiency of the evidence deals with adequacy rather than weight of the evidence. State v. Thompkins (1997),78 Ohio St.3d 380, 386. In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court holds that after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. State v. Goff (1998), 82 Ohio St.3d 123, 138.
 {¶ 15} The elements of the within aggravated murder are: purposely, and with prior calculation and design, causing the death of another. R.C. 2903.01(A). A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature. R.C. 2901.22(A).
 {¶ 16} As aforementioned, a witness heard appellant's final words before pulling the trigger. Upon entering the kitchen and raising his laser-sighted handgun, he stated, "Bitch, I'm gonna motherfucking kill you." He then fired a shot at Angela's face. A reasonable person could find that his conduct was performed with purpose to cause death.
 {¶ 17} Moreover, there exist a multitude of other facts and circumstances that also allow a reasonable person to find the element of purpose beyond a reasonable doubt. These include: his threats prior to leaving the bar the first time; his angry high-speed drive to his house across town to switch to a less expensive car and to gather weapons; his reentry into the bar with a gun drawn; and, his stalking through the bar to the kitchen in the far corner where he saw people taking cover. Many of these factors will be addressed in more depth below when analyzing his argument concerning prior calculation and design, a more stringent test than purpose. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 18} Appellant's first assignment of error contends:
 {¶ 19} "APPELLANT'S CONVICTION OF AGGRAVATED MURDER WAS BASED ON EVIDENCE NOT LEGALLY SUFFICIENT TO SUSTAIN A VERDICT OF GUILTY AS A MATTER OF LAW AS NO EVIDENCE OF PRIOR CALCULATION AND DESIGN WAS PRESENTED."
 {¶ 20} Under this assignment, appellant urges that even if there is sufficient evidence that he acted with purpose, there is not sufficient evidence that he acted with prior calculation and design. He states that he did not know the victim and had no prior contact with her. He notes that he pointed the gun at others but did not shoot any of them. He also points out that only one shot was fired and that his testimony claimed that he only intended to scare them.
 {¶ 21} The Supreme Court has stated that instantaneous deliberation is not prior calculation and design. State v.Cotton (1978), 56 Ohio St.2d 8, ¶ 2 of syllabus. Rather, the statute requires a scheme designed to implement the calculated decision to kill. Id. at 11. However, the classic case of the well-planned, cold-blooded killing is not necessary. State v.Taylor (1997), 78 Ohio St.3d 15, 19. There is no bright-line test; each case depends on the particular facts and circumstances existing therein. Id. at 20.
 {¶ 22} Although appellant states that he only intended to scare the patrons, that is essentially a credibility issue in this case, not a sufficiency issue. A reasonable person, viewing the evidence in the light most favorable to the state, could find that he had a scheme designed to implement his calculated decision to kill someone in order to seek vengeance and harm the bar.
 {¶ 23} In conducting this review, the threats made prior to leaving the bar the first time are relevant. Those statements can easily be construed as express threats to return and shoot up the bar and kill someone. As the bar manager testified, the threats were so intense that he sent the involved bouncer home and called the police. His interpretation of the threats is an example of what a reasonable person would believe appellant intended to accomplish later that night.
 {¶ 24} Then, appellant drove all the way across town at speeds reaching over one hundred miles per hour. He switched cars. He armed himself and his two friends.
 {¶ 25} He then returned across town and entered the bar with his gun drawn. His gun had a laser sight so he could see precisely where he was going to shoot. He entered the kitchen just after Angela ran in there. He was seen raising his gun just before the shot was fired. Besides a spent .380 caliber casing, alive .380 caliber round was found just outside the kitchen door, allowing the inference to be made that he loaded the chamber to ensure the gun would fire.
 {¶ 26} Finally, a witness heard him announce just before firing the shot, "Bitch, I'm gonna motherfucking kill you." He shot Angela in the face. Then, he exited calmly making gang-like statements, which tend to show he was satisfied that he completed his plan. A reasonable person can find a scheme designed to implement his plan and substantially more than instantaneous deliberation. Under the facts and circumstances of this case, there is sufficient evidence of prior calculation and design.
 {¶ 27} We also note that although he testified that he did not know the victim, that is just his claim. The victim was present at the bar during the initial fight that broke out on the dance floor. It is also interesting that appellant admits to smoking marijuana, drinking and taking valium that night, and the victim had all three of these substances in her blood as well. Additionally, appellant also knew the girl who had just run out from behind the cooler, and in fact, she was the person who turned his name in to the police. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 28} Appellant's second assignment of error claims:
 {¶ 29} "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 30} Here, appellant contends that the jury's determination was against the manifest weight of the evidence when they found that he acted with prior calculation and design. We shall also address the claim set forth in the second part of his fourth supplemental assignment of error that the jury's determination was against the manifest weight of the evidence when they found that he acted with purpose.
 {¶ 31} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. Thompkins, 78 Ohio St.3d at 387. The reviewing court determines whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id. Where the criminal case was tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389. This is only done in exceptional circumstances. Id. at 387.
 {¶ 32} When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. State v. Gore (1999), 131 Ohio App.3d 197,201. The jury was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it, including appellant himself. Seasons Coal Co. v. Cleveland
(1994), 10 Ohio St.3d 77, 80; State v. DeHass (1967),10 Ohio St.2d 230, 231.
 {¶ 33} The statements appellant made before he left the bar the first time reveal his plan to come back and shoot someone. A rational jury could find that he engaged in a purposeful sequence of actions in order to implement his plan. A rational jury could determine that appellant's decision was not made instantaneously. Although his initial threats may have been uttered with only instantaneous deliberation, he then had time to ponder his plan on his drive from the west side to the east side. To implement his plan, he switched cars and gathered weapons. He then retraced his steps back to the bar in order to finalize his scheme. He entered the bar with gun drawn, looking for a suitable target by focusing his laser beam on various patrons. He followed Angela into the kitchen. Most notable is his statement of impending death just prior to firing the shot into Angela's face. He then exited the bar in a calm manner making self-congratulatory statements.
 {¶ 34} A finding of prior calculation and design is not against the manifest weight of the evidence. Furthermore, a finding that appellant purposely pulled the trigger is not against the manifest weight of the evidence. We should not sit as the thirteenth juror and find that appellant was wholly credible in his claim that he only intended to scare the patrons and that he did not intend to shoot anyone. This assignment of error is overruled.
 SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER ONE {¶ 35} The first assignment of error submitted by replacement counsel provides:
 {¶ 36} "THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION IN LIMINE/SUPPRESSION REGARDING STATE'S EXHIBIT #30."
 {¶ 37} Prior to trial, the defense filed a motion in limine to preclude the state from introducing into evidence a letter appellant purportedly wrote while incarcerated in the Mahoning County Jail. The defense also timely objected to the letter's admission during trial. Appellant wrote this letter to his half-brother, whose mail was screened due to his residence in Ohio's prison system. The letter stated in part:
 {¶ 38} "Well, my Judge is Evans * * * You also asked what that bitch ass Nigga's name is. His name is Jose Rivera, and there are some people on the street that's telling on me, which you might know some of them. Their names are [list of the names of seventeen state witnesses, seven of whom ended up testifying against him at trial], but the main ones that I'm worried about are [the two eye-witnesses who knew him prior to the shooting and informed police] because everyone else can't identify me, or didn't see the shooting.
 {¶ 39} "Well anyway, I was just writing to let you know what[']s going on, and to let you know the names of the people that[`]s talking a little bit to[o] much for their own good but maybe you know some of them, and can talk to them when you get out, but if not don't worry about it because they can't keep a playa locked down forever."
 {¶ 40} Evid.R. 801(D)(2)(a) provides in pertinent part, "Statements which are not hearsay * * * A statement is not hearsay if * * * Admission by party-opponent. The statement is offered against a party and is * * * his own statement * * *." Because of the rule's subheading, "Admission by party-opponent," appellant contends that the letter must contain an admission in order to fit under this hearsay exclusion. Then, he urges that the letter does not constitute an admission.
 {¶ 41} First, the letter can be construed as an admission. It states that people are "telling on" him and notes that two witnesses can identify him and saw the shooting. It thus admits that he was the shooter.
 {¶ 42} Regardless, the rule does not require a statement against interest. It actually only requires a statement offered against a party that is his own statement. Statement is defined as an oral or written assertion. Evid.R. 801(A)(1). As the Staff Note reveals:
 {¶ 43} "It covers statements by a party opponent. The statement need not be against the interest of the declarant at the time made. It is sufficient that the statement be that of a party and that it is offered by the opposing party."
 {¶ 44} Moreover, this court has held that "[a] party opponent's statement need not be a statement against interest" to be admissible under Evid.R. 801(D)(2). Champion v. Dunn's Tire Auto Inc. (June 26, 2001), 7th Dist. No. 00CA42, *6. Thus, this argument is without merit.
 {¶ 45} Next, appellant contends that the letter is not excluded from the definition of hearsay under Evid.R. 802(D)(2)(a) because it is not properly shown to be "his own statement." In support, he refers to the rules concerning authentication.
 {¶ 46} The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Evid.R. 901(A). The rule then provides the following pertinent examples of authentication or identification:
 {¶ 47} "(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.
 {¶ 48} "(2) Nonexpert opinion on handwriting. Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.
 {¶ 49} "(3) Comparison by trier or expert witness. Comparison by the trier of fact or by expert witness with specimens which have been authenticated.
 {¶ 50} "(4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances. * * *." Evid.R. 901(B).
 {¶ 51} This list of methods for authentication or identification is non-exclusive as the rule specifically starts by stating, "By way of illustration only, and not by way of limitation * * *." Evid.R. 901(B).
 {¶ 52} Appellant notes that there was no testimony on his handwriting by an expert or non-expert and there was no comparison done by the trier of fact. He concludes that the letter was not properly authenticated and thus should not have been admitted as the defendant's own statement.
 {¶ 53} The state counters by stating that the totality of the facts and circumstances presented surrounding the letter and its contents establish distinctive characteristics sufficient to authenticate the letter and show that it is what the state claims it is; that is, a letter written by appellant. The state relies on this court's case of State v. Brown, 151 Ohio App.3d 36,2002-Ohio-5207 (7th Dist.). Although that case involved a sexual predator hearing, we still evaluated the facts of that case under the authentication requirement of the Rules of Evidence. See id. at ¶ 38-42.
 {¶ 54} Before getting into the specifics of that case, we shall review our statements describing the generalities of the rule of authenticity in Ohio. The purpose of the authentication rule is to connect the disputed piece of evidence to the case at hand by presenting indicators that the evidence is what it is claimed to be. Id. at ¶ 35. The authenticity requirement is not as strict as other admissibility rules such as those concerning hearsay. Id. at 34. Only a prima facie case of authenticity must be made. Id. Upon a prima facie showing, it becomes the jury's province to determine authenticity. Id. Thus, there must merely be substantial evidence upon which a jury could infer the document is authentic. Id. It is the jury who makes the ultimate decision regarding the weight to be placed upon that document. Id. at ¶ 35.
 {¶ 55} We then focused our attention in Brown to Evid.R. 901(B)(4), reiterating that evidence is properly authenticated when its appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances, are sufficient to support a finding that the evidence is what its proponent claims." Id. at ¶ 39. In evaluating the totality of the circumstances, we explained that the court can consider the envelope and contents. Id. at ¶ 40. For instance, the court can scan for any distinctive contents, such as facts that only the alleged writer would know. Id. at ¶ 39. This is true even if the letter is unsigned or anonymous. Id. at ¶ 40. As for the envelope, the return address can be relevant to the determination of authenticity. Id. Again, we explained that challenges to the authorship of documents such as letters normally go to the weight rather than admissibility. Id.
 {¶ 56} In Brown, the defendant contested the trial court's admission of letters he purportedly wrote to the trial judge. We found the following facts sufficiently established authentication for purpose of Evid.R. 901(B)(4): it was addressed to Brown's trial judge; it complained that a hearing in Brown's case did not take place as scheduled; it talked about Brown's history in the penal system; it discussed issues pertinent to Brown's sexual predator hearing; it spoke of witnesses from Brown's trial; it was signed with the Brown's name; the return address was Mahoning County Jail, where Brown was incarcerated on the day of postmark; and it was stamped "inmate correspondence." Id. at ¶ 41. We concluded that this letter contained prima facie evidence of authentication under Evid.R. 901(B)(4).
 {¶ 57} Here, the letter named the judge in appellant's case and spoke of his upcoming trial. The letter named Jose Rivera in a critical and emotional manner; this is appellant's accomplice turned state's witness. The letter named seventeen witnesses disclosed in the state's discovery packet, seven of whom ended up testifying against appellant at trial. The letter spoke of a shooting. It specified two witnesses who could identify appellant and who saw the shooting. These two witnesses (twin sisters) had already testified that they previously knew appellant as he dated their cousin. The letter was signed (printed), "LaTawon Townsend." The envelope listed a return address as, "L. Townsend" with the address of the Mahoning County Jail. Also, it was stamped, "inmate correspondence," as is all mail coming out of that jail. Furthermore, it was dated June 4, 2003 and was postmarked the next day, during which time period appellant was incarcerated in that jail. Lastly, it was intercepted by the Ohio State Highway Patrol prior to receipt by the intended recipient in prison. That intended recipient was appellant's brother.
 {¶ 58} Under the totality of the circumstances in this case and compared to the facts in our Brown case, there is substantial evidence upon which the jury could infer that appellant was the author of the letter. The letter was thus sufficiently authenticated under Evid.R. 901(B)(4) due to its various distinctive characteristics. Whether or not he truly wrote the letter was a jury question.
 {¶ 59} Finally, appellant combines various arguments to urge that the evidence should have been excluded due to prejudice. He contends that the probative value of the letter was substantially outweighed by the risk of unfair prejudice and thus its exclusion was mandatory under Evid.R. 403(A). He complains that the letter was used to show that he harbored an evil purpose to intimidate witnesses to keep them from testifying against him and was introduction of uncharged misconduct. He then states that this is not a fair interpretation because the letter has no evidence that harm was intended to the witnesses. He concludes that, at the very least, the letter is cumulative in light of direct eyewitness testimony on his actions that night. Thus, he urges that the letter should be excluded under the court's discretionary power of Evid.R. 403(B) dealing with cases where the probative value is substantially outweighed by the needless presentation of cumulative evidence.
 {¶ 60} Pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B). Here, the letter showed appellant's identity as the shooter. Thus, it was a clear exception to this rule. And, the purported other acts statement was contained in appellant's own admission regarding this case.
 {¶ 61} As the state notes, Evid.R. 403(A) deals with unfair prejudice, not prejudice in general since the purpose of most state's evidence is to incriminate the defendant and is thus prejudicial to him. The probative value of the letter is very high. It basically admitted that he was the shooter when it mentioned that two main witnesses could identify him as the shooter. It bolstered Jose Rivera's status as having knowledge of the facts. It was not the needless presentation of cumulative evidence. The probative value was not substantially outweighed by unfair prejudice. Moreover, appellant himself states that there is no intent to harm the witnesses set forth in the letter. Lastly, this is not the reason the state submitted the letter. For all of the foregoing reasons, this assignment of error is overruled.
 SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER TWO {¶ 62} The second assignment of error raised by replacement counsel contends:
 {¶ 63} "THE TRIAL COURT ERRED IN FAILING TO GIVE THE INSTRUCTION AS TO DEFENDANT/APPELLANT'S INTOXICATION AS IT RELATES TO PURPOSE."
 {¶ 64} Rivera testified that he and appellant smoked marijuana, took pills such as Valium and Percocet, and drank alcohol such as cognac and beer. (Tr. 301, 326). He stated that their alcohol consumption began at 8:30 p.m. and continued until they were removed from the bar just before midnight. Rivera disclosed, "we were very intoxicated." (Tr. 302). Appellant confirmed this mixture but did not opine that he was intoxicated or describe his level of intoxication. (Tr. 601, 616).
 {¶ 65} Crim.R. 30(A) specifically provides:
 {¶ 66} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
 {¶ 67} Appellant did not request a jury instruction on voluntary intoxication. Consequently, he waived this argument for purpose of appeal.
 {¶ 68} As a result, he urges that it was plain error for the trial court to fail to sua sponte instruct the jury that intoxication could preclude him from forming the requisite mental state. Crim.R. 52(B) states that the appellate court may recognize plain error if substantial rights are affected, even if the error was not brought to the attention of the court. However, before an appellate court can recognize plain error, the court must find obvious error affecting such substantial rights that it was outcome determinative. State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, at ¶ 62. Plain error is a discretionary doctrine to be used with the utmost of care by the appellate court only in exceptional circumstance to avoid a manifest miscarriage of justice. State v. Hughbanks, 99 Ohio St.3d 365, 2003-Ohio-4121, at ¶ 39. Such circumstances do not exist here.
 {¶ 69} Moreover, the "defense" of voluntary intoxication no longer exists as appellant is attempting to use it here. SeeState v. Johnson, 7th Dist. No. 02CA206, 2004-Ohio-567, ¶ 12. Prior Ohio law stated that a defendant may attempt to use the fact of extreme intoxication to negate the element of specific intent. State v. Otte (1996), 74 Ohio St.3d 555, 564. However, effective October 27, 2000, the legislature has specifically mandated:
 {¶ 70} "Voluntary intoxication may not be taken intoconsideration in determining the existence of a mental state thatis an element of a criminal offense." R.C. 2901.21(C) (emphasis added).
 {¶ 71} The statute goes on to say that evidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged. However, there was no issue as to whether appellant was physically capable here. And regardless, evidence of intoxication was in fact presented as allowed per this statute.
 {¶ 72} Due to the fact that R.C. 2901.21(C) prohibits the very jury instruction appellant desires, his argument is wholly without merit.
 SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER THREE {¶ 73} The third assignment of error set forth by replacement counsel states:
 {¶ 74} "THE TRIAL COURT ERRED IN FAILING TO GIVE JURY INSTRUCTIONS ON THE LESSER INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER."
 {¶ 75} First, we note that there was nothing to suggest that a voluntary manslaughter instruction was warranted. Voluntary manslaughter can be an inferior degree offense of aggravated murder. State v. Shane (1992), 63 Ohio St.3d 630, 632. Voluntary manslaughter entails knowingly causing the death of another while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. R.C.2903.03(A).
 {¶ 76} Here, there was no evidence of sudden passion or sudden fit of rage. There was no evidence of serious provocation reasonably sufficient to incite deadly force, let alone any provocation at all by the victim. Moreover, there was a cooling off period. As such, a voluntary manslaughter instruction would not have been warranted.
 {¶ 77} Involuntary manslaughter entails causing the death of another as a proximate result of committing or attempting to commit a felony or a misdemeanor. R.C. 2903.04(A) and (B). Involuntary manslaughter can be a lesser included offense of aggravated murder. State v. Lynch, 98 Ohio St.3d 514,2003-Ohio-2284, ¶ 79 (distinguishing factor is mental state). An instruction on the lesser included offense of involuntary manslaughter can be given in an aggravated murder trial only when the jury could reasonably find against the state on the element of purposefulness and prior calculation and design and still find for the state that the defendant killed another. State v.Thomas (1998), 40 Ohio St.3d 213, 216 (evidence must reasonably support an acquittal on the crime charged and a conviction upon the lesser included offense).
 {¶ 78} Here, it is undisputed that the jury could reasonably find that defendant killed another. Appellant then urges that if a jury believed that he did not mean to pull the trigger (because his only intent was to scare people), then they could have convicted him of involuntary manslaughter. The state counters that accident is not involuntary manslaughter since the death did not occur as a proximate result of committing a felony or misdemeanor.
 {¶ 79} However, appellant responds that the offense during which the death occurred could have been aggravated menacing, for instance. Aggravated menacing is defined as knowingly causing another to believe that the offender will cause serious physical harm to the person or property of the other person. R.C.2903.21(A). Thus, he states that a reasonable jury could believe his claim of solely having intent to scare by waving a gun and could then find that he proximately caused a death while knowingly causing another to believe that he would cause serious physical harm to persons and property. But, see, State v.Goodwin (1999), 84 Ohio St.3d 331, 347 (involuntary manslaughter instruction not warranted just because defendant claims the "gun just went off" and that he "didn't meant to" shoot, where under any reasonable view, killing was done with purpose).
 {¶ 80} In any event, appellant fails to establish how he preserved this issue for appellate purposes. As stated in the previous assignment of error, Crim.R. 30(A) specifically provides:
 {¶ 81} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
 {¶ 82} There is no indication that appellant requested jury instructions on either voluntary or involuntary manslaughter or that he objected to the court's failure to give these instructions. Consequently, he waived this argument for purpose of appeal. Civ.R. 30(A). See, also, App.R. 12(A)(2) (stating that the appellate court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based).
 {¶ 83} And, there is no manifest need for this court to consider plain error as exceptional circumstances are not evident. There is overwhelming evidence of his intent, and his substantial rights were not affected.
 {¶ 84} In fact, the jury was instructed on the lesser included offense of murder. Yet, they refused to convict appellant of this lesser offense and instead convicted him of aggravated murder as charged. Thus, they believed that not only did he purposely kill Angela but that he did so with prior calculation and design. As such, prejudice is lacking. This assignment of error is overruled.
 SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER FIVE {¶ 85} The final assignment of error set forth by replacement counsel concludes:
 {¶ 86} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE FOUR ASSIGNMENTS OF ERROR AS SET FORTH HEREIN."
 {¶ 87} A conviction may be reversed if the cumulative effect of multiple errors, although harmless by themselves, deprives the defendant of his constitutional right to a fair trial. State v.DeMarco (1987), 31 Ohio St.3d 191, 196-197. Appellant failed to set forth multiple instances of error. Even if appellant had set forth more than one example of error, any of the claimed errors herein were harmless, individually as well as cumulatively.
 {¶ 88} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., DeGenaro, J., concurs.