[Cite as *State v. Hardman*, 2024-Ohio-300.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| DOUGLAS HARDMAN | : | Case No. 2023-CA-00046 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 2023-CR-0135


JUDGMENT:                               Affirmed


DATE OF JUDGMENT:                  January 29, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KYLE L. STONE                          PATRICK L. CUSMA
PROSECUTING ATTORNEY           116 Cleveland Avenue NW
STARK COUNTY                         Suite 600
                                              Canton, OH  44702

  BY:  CHRISTOPHER A. PIEKARSKI
        110 Central Plaza South, Suite 510
        Canton, OH  44702-1413

*King, J.*

{¶ 1}   Defendant-Appellant Douglas Hardman appeals the April 4, 2023 judgment of the Stark County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio. We affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On January 13, 2023, E.T., the victim in this matter, and his girlfriend, C.J. were at home in their apartment on Robin Court in Canton, Ohio. E.T. and C.J. had a 6-month-old daughter in common. C.J. had three other older children from a prior relationship. Those children were all present that day as well. Also present was Hardman, a friend of C.J.'s. C.J had been drinking and was intoxicated.

{¶ 3}   Around 6:00 p.m. that evening, the adults decided to get pizza. C.J., Hardman and the three older children were going to go pick up the pizza and E.T. was going to stay at the apartment with the infant. Hardman, C.J. and the children all got into the car to leave. A few minutes later, however, Hardman and C.J. went back into the apartment. They said $20 was missing and both accused E.T. of taking the money.

{¶ 4}   An argument ensued which escalated to a shoving between the three, and eventually to Hardman punching E.T. in the head while E.T. was holding his daughter. E.T. returned the assault, either with his fist or the tequila bottle C.J had been drinking out of, and Hardman fell to the floor, bleeding from his head. E.T. helped Hardman up, and Harman swung at E.T. again. E.T. again returned the punch. E.T. then asked Hardman why he hit him, and Hardman replied "I didn't shoot you." Transcript of trial (T.) 150-151. Hardman took his daughter upstairs.

{¶ 5}   When he returned, Hardman had armed himself with a pan and a knife. When he again approached E.T., E.T. snatched the pan away from Hardman, but failed to notice the knife. Hardman then put the knife to E.T.'s stomach, but did not break the skin because the tip of the knife had previously broken off. E.T. then ran upstairs to grab a bat to "Scare [Hardman] away." T. 178. But by the time he got back downstairs, Hardman was outside in his car with the older children. E.T. went outside and tapped on the car window with the bat and the two continued to verbally spar. As Hardman drove away with the three kids in the car, E.T. threw the bat towards the car.

{¶ 6}   Once Hardman was gone, E.T. retrieved the bat, then went inside to get his cigarettes. He then stood on the front porch of the apartment smoking. He was still angry and still had the bat in his hand. E.T. paced back and forth repeatedly yelling "Hey does anybody hear me? This [expletive] * * * tried to stab me." T. 191.

{¶ 7}   A neighbor across the street looked out her window to see what all the commotion was about. She observed E.T. shirtless in front of his apartment and yelling as a car pulled away. Five to six minutes later, the neighbor observed an individual later identified as Hardman pull up in a light-colored car. She watched Hardman immediately get out with a gun, and proceed to fire five or six shots at E.T. over the hood of the car. While shooting, Hardman yelled expletives. Hardman then slowly turned the car around and drove away. According to the neighbor, Hardman was the only person shouting during the shooting, and she observed no aggressive behavior from E.T.

{¶ 8}   Meanwhile, before E.T. could even assess what was happening, Hardman began shooting. E.T. ran into the apartment to take cover, but not before two bullets

grazed him and one embedded in a fleshy portion of his arm. Additional rounds caused damage to the interior of the apartment.

{¶ 9}  Police arrived at the scene and began their investigation. Canton Police Detective Vincent Romanin located several .22 caliber shell casings in the road in front of E.T.'s apartment and bullet holes in the door and front of the apartment. He observed E.T.'s injuries as well.

{¶ 10} Upon identifying Hardman as the shooter and arresting him, officers first transported Hardman to the hospital for assessment of a head injury he incurred during the fight with E.T. Once Hardman was medically cleared, officers spoke with him. He was initially evasive, but later became more forthcoming and admitted he shot at E.T. A later search warrant executed at Hardman's home produced the firearm used by Hardman. It was found in the location where Hardman told officers they would find it.

{¶ 11} On February 23, 2023, the Stark County Grand Jury returned an indictment charging Hardman with one count of felonious assault a felony of the second degree with a firearm specification, one count of discharging a firearm on or near prohibited premises, a felony of the second degree, one count of discharging a firearm at or into a habitation or in a school safety zone, a felony of the second degree, and three counts of endangering children, misdemeanors of the first degree.

{¶ 12} Hardman pled not guilty to the charges and opted to proceed to a jury trial which took place on March 27 and 28, 2023. Before trial, Hardman filed a Crim.R. 12.2 notice of intent to argue self-defense. At trial, the state presented testimony from E.T., the neighbor, and Detective Romanin. Hardman testified on his own behalf.

{¶ 13} After hearing the evidence and deliberating, the jury found Hardman guilty as charged. He was subsequently sentenced to an aggregate total of 7 to 9 years incarceration.

{¶ 14} Hardman filed an appeal and the matter is now before this court for consideration. He raises four assignments of error as follow:

I

{¶ 15} "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED."

II

{¶ 16} "THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

III

{¶ 17} "THE TRIAL COURT PLAINLY ERRED BY FAILING TO PRESENT A JURY INSTRUCTION OF THE LESSER INCLUDED OFFENSE OF AGGRAVATED ASSAULT."

IV

{¶ 18} "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."

I, II

{¶ 19} Hardman's first and second assignments of error are interrelated and will be addressed together. In these assignments of error, Hardman appears to challenge only his conviction for felonious assault. He argues the state failed to disprove his claim of self-defense and therefore his conviction is against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 20} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 21} Hardman argues the state presented no evidence to disprove his claim that he acted in self-defense. While Hardman frames this argument as a sufficiency challenge, the state's burden of disproving a defendant's self-defense claim beyond a reasonable

doubt is subject to a manifest-weight review on appeal. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653 ¶27. We therefore analyze the arguments contained in Hardman's first and second assignments of error under the manifest weight standard of review.

{¶ 22} R.C. 2901.05(B)(1) provides:

> (B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶ 23} The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that the defendant used force in self-defense. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653 ¶ 21. The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. *Id.* at ¶ 24. In other words, if the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not

act in self-defense. *Id.* at ¶26; *State v. Gatewood*, 1st Dist. Hamilton No. C-190654, 2021-Ohio-3325, ¶ 68. The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986); *State v. Staats*, 5th Dist. Stark No. 2019CA00181, 2021-Ohio-1325 ¶ 28.

{¶ 24} The state was required to disprove at least one of the following: 1) Hardman was not at fault in creating the situation giving rise to the affray, 2) Hardman had reasonable grounds to believe and an honest belief even if mistaken that he was in imminent danger of death or great bodily harm and that he did not use more force than necessary to defend against the attack and 3) Hardman must not have violated any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 79, 388 N.E.2d 755 (1979) (citations omitted). The jury in this matter was so instructed. T. 322-324.

{¶ 25} Hardman first attacks the neighbor's testimony, arguing she provided a physical description of the shooter that was inconsistent with his own, and further, could not accurately describe the vehicle the shooter drove. But because Hardman advanced the affirmative defense of self-defense, he necessarily admitted that he shot E.T. but did so in self-defense. The accuracy of the neighbor's description of the shooter and the vehicle is therefore not relevant.

{¶ 26} Hardman next argues he was not at fault in creating the situation giving rise to the affray, and had an honest belief he was in imminent danger of great bodily harm. These arguments fail because there was more than one affray and Hardman was at fault for creating a second affray. While Hardman argues he was not at fault, he supports his arguments by pointing to the initial fistfight. But that matter was over as soon as Hardman

drove off in his car with the children. It was Hardman who chose to go back to the apartment five to six minutes later, with a gun, and immediately upon arriving and spotting E.T. get out of the car in the middle of the street and shooting at E.T. T. 158, 191-192. At trial only Hardman claimed E.T. ran toward Hardman' car before Hardman started firing. The neighbor did not see E.T. run towards the car and E.T. testified he was on the porch smoking a cigarette when Hardman started shooting. T 156-157, 191-192. While Hardman seeks to justify his return to the apartment with a claim that he was dropping off the children, that claim was subject to a credibility determination by the jury and further, does nothing to further his self-defense argument.

{¶ 27} Harman next argues his trial testimony was more credible than the testimony of E.T. and E.T's neighbor. However, we must afford the credibility determinations of the jury the appropriate deference. "We will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the fact finder lost its way." *State v. Ricer*, 5th Dist. Ashland No. 19-COA-023, 2018-Ohio-426, 106 N.E.3d 819 ¶19. Upon review of the entire record we find the jury did not lose its way in finding the state's witnesses more credible than Hardman.

{¶ 28} Finally, Harman argues the jury lost its way by failing to consider the head injury he sustained in the fistfight with E.T., and because, allegedly, following trial, some jurors were asking if E.T. was charged with a crime. We find no evidence in the record to support a conclusion that the jury failed to consider Hardman's head injury and Hardman points to none. Also absent from the record is any evidence of comment by jury members pertaining to charges against E.T. We therefore reject these arguments.

{¶ 29} Upon review, we find Hardman was at fault for creating the affray and further, utilized inappropriate force. A finding that he did not act in self-defense is therefore not against the manifest weight of the evidence. The first and second assignments of error are overruled.

III

{¶ 30} In his next assignment of error, Hardman argues the trial court committed plain error when it failed to sua sponte provide the jury with an instruction on the lesser included offense of aggravated assault. We disagree.

{¶ 31} Hardman did not request an instruction on the inferior offense of aggravated assault. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). In order to prevail under a plain error analysis, an appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 32} This court has previously found aggravated assault, as defined by R.C. 2903.12(A)(2), is not a lesser included offense of felonious assault. *State v. Fleming*, 5th Dist. Licking No. 97CA133, 1998 WL 346689, *5, appeal not allowed, 83 Ohio St.3d 1447, 700 N.E.2d 331 (1998), citing *State v. Deem*, 40 Ohio St.3d 205, 210, 533 N.E.2d 294 (1988). Rather, aggravated assault is an inferior degree of felonious assault because the elements of aggravated assault are identical to those of felonious assault, with the

exception of the additional mitigating element of serious provocation. *Id.*, citing *State v. Mack*, 82 Ohio St.3d 198, 200, 694 N.E.2d 1328 (1998).

{¶ 33} In order to be serious, provocation "must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Deem*, paragraph five of the syllabus.

{¶ 34} Provocation must be occasioned by the victim and must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Shane*, 63 Ohio St.3d 630, 635, 637, 590 N.E.2d 272 (1992). If an offender has time to "cool off" a conclusion that the offender acted in a sudden fit of passion or rage is precluded. Many Ohio courts, including this court have found a very short period of reflection or disconnection from the affray is a sufficient cooling off period. *State v. Byerly*, 5th Dist. Richland No. 02-CA-81 2023-Ohio-6911, ¶ 36 ("Appellant proceeded to park his car almost one half mile away and walk to the mobile home. That amount of time would have allowed a cooling off period."); *State v. Townsend*, 7th Dist. Mahoning No. 04 MA 110, 2005-Ohio-6945, ¶ 4, 76. (Appellant drove home to get a weapon and returned to the bar.).

{¶ 35} For the same reasons discussed under the first and second assignments of error, Hardman was not entitled to an instruction on the inferior offense of aggravated assault. Hardman instigated the second confrontation. He had removed himself from the situation, providing for a break in the fighting for five to six minutes, sufficient time to

reflect and cool off, only to return the scene and become the provocator himself. The fourth assignment of error is overruled.

IV

{¶ 36} In his final assignment of error, Hardman argues his trial counsel rendered ineffective assistance by failing to request a jury instruction for the lesser included offense of aggravated assault. We disagree.

{¶ 37} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 38} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 39} Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carver*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). The failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. *State v. Clayton*, 62

Ohio St.2d 45, 402 N.E.2d 1189 (1980); *State v. Griffie*, 74 Ohio St.3d 332, 333, 658 N.E.2d 764 (1996).

{¶ 40} As discussed above, Hardman was not entitled to an instruction on the inferior offense of aggravated assault. He therefore fails to establish either *Strickland* prong.

{¶ 41} The final assignment of error is overruled.

{¶ 42} The judgment of the Stark County Court of Common Pleas is affirmed.

By King, J.,

Delaney, P.J. and

Gwin, J. concur.