The STATE of Ohio, Appellee,

v.

FRANKLIN, Appellant.

[Cite as *State v. Franklin*, 178 Ohio App.3d 460, 2008-Ohio-4811.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07–MA–158.

Decided Sept. 19, 2008.

**462**

Paul Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera, Assistant Prosecuting Attorney, for appellee.

Gary Van–Brocklin, for appellant.

DONOFRIO, Judge.

{¶ 1} Defendant-appellant, Craig Franklin, appeals from a Mahoning County Common Pleas Court judgment convicting him of seven counts of felonious assault on a police officer and seven accompanying firearm specifications following a jury trial.

{¶ 2} On July 1, 2005, Youngstown Police Officer Michael Marciano was looking on the east side of Youngstown for Duniek Christian, who had several outstanding warrants. He noticed Christian driving a white Cadillac, with three other black males in the vehicle. Officer Marciano called for backup. By the time the officers looked again for Christian, they did not see him. The officers split up to look for the Cadillac, which coincidentally had been reported stolen.

{¶ 3} Eventually, officers saw the Cadillac again, and a pursuit began. It included the Cadillac and four police cruisers, one of which was unmarked. During the pursuit, the Cadillac crashed into the unmarked police car driven by Detective–Sergeant Mike Lambert. In the car with Detective–Sergeant Lambert were Officer Ramon Cox and Special Agent Guy Hunnyman.

{¶ 4} After the crash, the Cadillac drove away. Sergeant William Ross was the first officer to follow it. He saw someone extend the muzzle of a long gun out of the passenger side of the car. Sergeant Ross stated that the back window of the Cadillac exploded and he came under gunfire. His car was hit.

{¶ 5} Detective–Sergeant Lambert followed Sergeant Ross. He stated that the man in the front passenger seat of the Cadillac was shooting at his car also. He then saw the back window of the Cadillac explode. Detective–Sergeant Lambert stated that at that point, three people were shooting at the officers from the Cadillac.

{¶ 6} Officer Chad Zubal was driving the third police car. He was accompanied by Officer Gregory Mullinex. Officer Zubal stated that at one point the Cadillac made a turn so that the rifles that were shooting out of the backseat of the Cadillac were firing directly at him and Officer Mullinex.

{¶ 7} Officer Brian Voitus was driving the fourth police car. Officer Dave Wilson accompanied him. Officer Voitus's cruiser eventually came under fire from the Cadillac too. He saw two guns shooting from the backseat.

{¶ 8} The Cadillac eventually came to a stop, and three of the occupants bailed out while one occupant shot suppressive fire at the officers with an assault rifle. The three occupants who ran, later identified as Christian, Jumal Edwards, and Brandon Jackson, went into the nearby woods. Eventually, the shooter ran into the woods too.

{¶ 9} The police were not able to apprehend anyone that day. However, the next day, they arrested appellant, along with Christian and Edwards.

{¶ 10} All seven of the officers who were shot at identified appellant as the occupant of the Cadillac who had shot the cover fire at them.

{¶ 11} A Mahoning County grand jury indicted appellant on seven counts of felonious assault, first-degree felonies in violation of R.C. 2903.11(A)(2)(D), with a firearm specification accompanying each count. The firearm specifications specifically alleged that appellant, in committing each felonious assault, discharged a firearm from a motor vehicle in violation of R.C. 2941.146(A).

{¶ 12} The matter proceeded to a jury trial, and the jury returned guilty verdicts on all counts and specifications. The trial court later sentenced appellant to ten years on each count, to be served consecutively, and five years on each specification, to be served prior to and consecutive to the ten years on each count and to each other, for a total of 105 years. The court further ordered that appellant serve this sentence consecutive to his sentence in another case.

{¶ 13} Appellant filed a timely notice of appeal on September 12, 2007.

{¶ 14} Appellant raises three assignments of error, the first of which states:

{¶ 15} "It was error to sentence appellant to consecutive sentences for the firearm specifications, where they were committed as part of the same act of [sic] transaction. the sentence was void as it violated O.R.C. 2929.14(D)(1)(c)."

{¶ 16} Appellant asserts that the trial court erred in ordering him to serve the sentences on the specifications consecutively. He argues that the police chase was a single transaction. Therefore, appellant contends that pursuant to R.C. 2929.14(D)(1)(c), the trial court could not order him to serve multiple sentences on the specifications. He concedes, however, that consecutive sentences were permissible for the substantive counts.

{¶ 17} R.C. 2929.14(D)(1)(c) provides:

{¶ 18} "[I]f an offender who is convicted of or pleads guilty * * * to a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another, also is convicted of or

pleads guilty to a specification of the type described in section 2941.146 of the Revised Code that charges the offender with committing the offense by discharging a firearm from a motor vehicle other than a manufactured home, the court, after imposing a prison term on the offender for the violation of * * * the other felony offense under division (A), (D)(2), or (D)(3) of this section, shall impose an additional prison term of five years upon the offender * * *. *A court shall not impose more than one additional prison term on an offender under division (D)(1)(c) of this section for felonies committed as part of the same act or transaction.*" (Emphasis added.)

{¶ 19} Thus, according to R.C. 2929.14(D)(1)(c), if an offender commits multiple felonies as part of the same act or transaction, the trial court may impose only one additional prison term for the accompanying specifications.

{¶ 20} The Ohio Supreme Court has defined "transaction" as used in a previous specification sentencing statute as " 'a series of continuous acts bound together by time, space, and purpose, and directed toward a single objective.' " *State v. Wills* (1994), 69 Ohio St.3d 690, 691, 635 N.E.2d 370, quoting *State v. Caldwell* (Dec. 4, 1991), 9th Dist. No. 14720, 1991 WL 259529. This court has stated that the focus should be on the defendant's overall criminal objectives, not on the specific animus for each crime. *State v. Moore,* 161 Ohio App.3d 778, 2005-Ohio-3311, 832 N.E.2d 85, at ¶ 45.

{¶ 21} In this case, there is no question that appellant's acts of shooting at the seven officers were bound together by time and space. This case involved a single police pursuit involving the Cadillac and four police vehicles. Appellant and two others in the Cadillac opened fire on the police vehicles as the police vehicles pursued the Cadillac. Furthermore, appellant acted with a single purpose and objective in shooting at the police vehicles: to elude the police and escape apprehension.

{¶ 22} Cases from this district and others support the conclusion that appellant acted with a single purpose and objective.

{¶ 23} For instance in *State v. Adams,* 7th Dist. No. 00–CA–211, 2006-Ohio-1761, 2006 WL 890971, the appellant was convicted of two counts of attempted murder and two accompanying firearm specifications. The matter stemmed from a drug buy where the appellant shot one victim. The second victim tried to wrestle the gun from the appellant and fled, but the appellant shot him too. The trial court sentenced the appellant separately on each of the two firearm specifications and ordered that he serve them consecutively. This court reversed the appellant's sentence and remanded the matter for resentencing, finding: "The facts in the instant matter do not present sufficient separate purposes to support the two gun specification sentences. As Appellant states, both attempted murders appear to be part of Appellant's overall plan to steal drugs from

Lovejoy. In other words, both offenses were likely part of the same criminal transaction." Id. at ¶ 62.

{¶ 24} In *State v. Bunch,* 7th Dist. No. 02–CA–196, 2005-Ohio-3309, 2005 WL 1523844, reversed on other grounds as stated in *In re Ohio Criminal Sentencing Statutes Cases,* 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174, the appellant was convicted of three counts of rape, three counts of complicity to rape, kidnapping, and aggravated robbery, each with an accompanying firearm specification. The trial court imposed consecutive three-year prison sentences for the each of the firearm specifications. On appeal, the appellant argued that the trial court should have merged the specification sentences into one sentence. We concluded that at most, the appellant acted with three separate objectives: robbery, kidnapping, and rape. Id. at ¶ 230–231. Thus, we concluded that the evidence supported the justification of at most three gun specifications, not eight. Id. at ¶ 232.

{¶ 25} In addition to these cases from our court, other courts have reached similar results.

{¶ 26} For example, in *State v. Dixson,* 1st Dist. No. C–030227, 2004-Ohio-2575, 2004 WL 1124524, the appellant was convicted of, among other things, four counts of felonious assault for firing a gun from his car at another car occupied by four individuals. The appellant was also convicted of accompanying firearm specifications for each felonious-assault count. The First District found that because the felonious assaults stemmed from the same act or transaction, the court properly sentenced the appellant to one mandatory five-year prison term for the firearm specification that accompanied one of the offenses. Id. at ¶ 41.

{¶ 27} And in *State v. Blackman,* 6th Dist. No. L–01–1349, 2003-Ohio-2216, 2003 WL 2007105, the trial court sentenced the appellant on one firearm specification that accompanied aggravated robbery and felonious assault for the robbery and assault on a convenience-store clerk, one firearm specification that accompanied six felonious assaults of six police officers who pursued him, and one firearm specification that accompanied felonious assault for a later assault on a police officer. Thus, the trial court ordered the appellant to serve a total of three consecutive sentences for three firearm specifications. The appellate court affirmed. In discussing two of the firearm-specification sentences, the court stated:

{¶ 28} "Further, appellant's purpose, to repel the officers, and his sole objective, to escape from the police, were distinct from the purpose and objective of the aggravated robbery. Consequently, the use of the firearm in these felonious assaults was not part of the same act or transaction as the aggravated robbery and felonious assault for which appellant was convicted in Counts 1 and 2. Thus, we find no problem with the imposition of a second consecutive sentence for the

firearm specifications in Counts 4 through 8 that is separate from Counts 1 and 2." Id. at ¶ 22.

{¶ 29} Finally, in *State v. Gray,* 10th Dist. No. 04AP–938, 2005-Ohio-4563, 2005 WL 2100595, the trial court sentenced the appellant to three consecutive three-year sentences on three firearm specifications. A jury had convicted the appellant of one count of attempted burglary, two counts of felonious assault with firearm specifications, and one count of improperly discharging a firearm at or into a habitation with a firearm specification. The facts revealed that the appellant had fired two shots in rapid succession at an inhabited house in response to the inhabitants' verbal attempts at thwarting an attempted burglary. On appeal, the appellant argued and the state conceded that the three felony convictions arose from a single transaction and, accordingly, the trial court could sentence the appellant to only one three-year term of actual incarceration. The court of appeals agreed. It reversed the appellant's sentence and remanded the matter for resentencing.

{¶ 30} Based on the above-cited case law, we conclude that the trial court erred in sentencing appellant to consecutive five-year sentences on all seven firearm specifications. Appellant's actions of shooting at the police while they gave chase to the Cadillac constituted a single transaction. Like the appellant in *Blackman,* 2003-Ohio-2216, 2003 WL 2007105, appellant's sole purpose in firing his weapon was to repel the officers and escape apprehension. Thus, the trial court should have merged appellant's firearm specifications for purposes of sentencing. In so doing, the court should have sentenced appellant to five years on the merged specifications. Adding this sentence to appellant's 70–year sentence on the seven felonious-assault counts results in a total sentence of 75 years.

{¶ 31} Accordingly, appellant's first assignment of error has merit.

{¶ 32} Appellant's second assignment of error states:

{¶ 33} "It was error to permit the prosecuting [sic] to peremptorily excuse the only black juror on the entire jury venire."

{¶ 34} Here, appellant argues that the state failed to provide a valid, race-neutral reason as required by *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, for excluding the only black member of the jury venire. Appellant asserts that the state used its first peremptory challenge to excuse the only black venire member, juror Patton. He contends that the record does not support the prosecutor's given reasons for excusing Patton. He argues that the prosecutor mischaracterized Patton's statements, cited answers out of context, and misled the court.

{¶ 35} The Ohio Supreme Court has set out the steps for analyzing a *Batson* challenge as follows:

{¶ 36} "First, the opponent of the peremptory strike must make a prima facie case of racial discrimination. Second, if the trial court finds that the opponent has fulfilled this requirement, then the proponent of the strike must come forward with a racially neutral explanation for the strike. * * * The 'explanation need not rise to the level justifying exercise of a challenge for cause.' [*Batson*, 476 U.S.] at 97, 106 S.Ct. [1712], 90 L.Ed.2d [69].

{¶ 37} "Third, if the proponent puts forward a racially neutral explanation, the trial court must decide, on the basis of all the circumstances, whether the opponent has proved purposeful racial discrimination. * * * The burden of persuasion is on the opponent of the strike." *State v. Herring* (2002), 94 Ohio St.3d 246, 255–256, 762 N.E.2d 940.

{¶ 38} An appellate court will not reverse the trial court's decision of no discrimination unless it is clearly erroneous. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310.

{¶ 39} First, we should point out that appellant incorrectly asserts that the state used its first peremptory challenge to excuse the only black potential juror. The state used two other peremptory challenges prior to using its third challenge to excuse Patton.

{¶ 40} When the state did excuse Patton, appellant objected based on *Batson*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. The state then gave its reasons for excusing Patton:

{¶ 41} "[Y]esterday he disclosed he did have a prior domestic violence charge and conviction involving his daughter, and he also indicated yesterday—and I believe his exact words were that the state's case would be weakened if they did not provide DNA as well as ballistics to support officer testimony."

{¶ 42} Patton's actual statement regarding his domestic-violence issue was that he was charged with domestic violence for an incident involving his daughter. He did not state that he was convicted, as the prosecutor indicated in giving her reason for excusing him. However, he was nonetheless charged with domestic violence against his daughter. Part of the prosecutor's reason for excusing Patton was also that he was charged with domestic violence against his daughter. This part was accurate. Had the prosecutor simply based her reason for excusing Patton on the domestic-violence charge involving his daughter, this would still be a race-neutral reason for his excusal.

{¶ 43} As to the state's other reason for excusal, appellant urges this court to consider the following exchanges with Patton. Appellant's counsel brought up a

discussion with the jury regarding corroborating evidence and the fact that the state's case would be based on police officers' testimony. Counsel went over all different types of possible corroborating evidence, including such things as DNA, video cameras in police cruisers, and fingerprints. Counsel then posed the question to Patton of what would happen if there was no corroborating evidence. Patton responded: "Well, it's something you have to look at, but without the DNA and without the cooperating [sic] evidence, it makes the case weaker."

{¶ 44} Again, the prosecutor's statement to the court in quoting Patton was slightly off. Patton did not specifically say that the state needed to provide ballistics evidence, as the prosecutor implied. But the gist of the state's reason for excusal was the same. The state was concerned that Patton would hold against it the fact that its case relied solely on officers' testimony and that it did not have any scientific evidence to support its case.

{¶ 45} The trial court is in the best position to evaluate the exchange between the potential jurors and counsel and to determine whether the prosecutor's reasons are plausible or are fabricated to hide discriminatory intent. *State v. Davis*, 1st Dist. No. C–040665, 2006-Ohio-3171, 2006 WL 1716133, at ¶ 22. Here, we will defer to the trial court's finding of no discrimination. The state provided two race-neutral reasons for excusing Patton. The trial court was best able to determine whether these reasons were believable or whether they were merely a pretext for discrimination. Accordingly, appellant's second assignment of error is without merit.

{¶ 46} Appellant's third assignment of error states:

{¶ 47} "It was error to permit the prosecution to cross-examine appellant concerning a previous murder conviction over the objection of counsel and without a proper limiting instruction."

{¶ 48} Appellant took the witness stand on his own behalf. On direct examination, appellant admitted that he had a murder conviction. On cross examination, the prosecutor then questioned him as follows:

{¶ 49} "Q So you're a murder?

{¶ 50} "A No.

{¶ 51} "Q You're not a murder?

{¶ 52} "A No.

{¶ 53} "Q Okay. I'm sorry. I must have missed something. You were convicted of murder?

{¶ 54} "A Yes.

{¶ 55} "Q Okay. But they were wrong?

{¶ 56} "MR. YARWOOD: Objection

{¶ 57} "THE COURT: Overruled. He's asking a question.

{¶ 58} "THE WITNESS: Yes.

{¶ 59} "Q They were wrong?

{¶ 60} "A Yes.

{¶ 61} "Q Okay. And that was a jury?

{¶ 62} "A Yes.

{¶ 63} "MR. YARWOOD: Objection.

{¶ 64} "Q You're a robber?

{¶ 65} "THE COURT: Overruled.

{¶ 66} "THE WITNESS: No.

{¶ 67} "Q No. Not a robber either?

{¶ 68} "A Huh-uh.

{¶ 69} "Q They were wrong there, too?

{¶ 70} "A Yes.

{¶ 71} "MR. YARWOOD: Objection.

{¶ 72} "THE COURT: Overruled.

{¶ 73} "Q And I suppose that the seven police officers that sat on that stand and said they saw you lay down cover fire for the other three guys, they're all wrong, too?"

{¶ 74} As can be seen, appellant's counsel objected several times during this questioning.

{¶ 75} In his final assignment of error, appellant argues that the trial court should not have allowed the prosecutor to "bore in" on appellant regarding his murder conviction. He contends that this error was further compounded because the court failed to give the jury a limiting instruction regarding the prosecutor's questioning.

{¶ 76} The trial court has broad discretion in determining whether prior convictions will be admitted pursuant to Evid.R. 609, and the extent to which such testimony will be used. *State v. Clark*, 7th Dist. No. 04–MA–246, 2006-Ohio-1155, 2006 WL 621562, at ¶ 67. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 77} Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Evid.R. 404(B). But for the purpose of attacking credibility, evidence that the accused has been convicted of a crime is admissible if the crime was punishable by imprisonment in excess of one year and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 609(A)(2).

{¶ 78} In this case, appellant brought up the issue of his felony convictions and his credibility when he took the stand in his own defense. He admitted on direct examination that he had both a robbery and a murder conviction. Thus, appellant opened the door to this issue and to his credibility.

{¶ 79} However, the prosecutor crossed the line when he asked appellant whether he was a "murder" and a "robber." Evid.R. 609 allows the state to impeach the accused's credibility with evidence of prior felony *convictions*. Here, the prosecutor went beyond asking appellant whether he was convicted of murder and robbery. Instead, he asked whether appellant was in fact a murderer and a robber, which is a different question. By asking appellant whether he was a murderer and a robber, the prosecutor attempted to establish appellant's bad character in general instead of attacking his credibility for truth and veracity as Evid.R. 609 intends.

{¶ 80} Importantly, and contrary to appellant's assertion, however, the trial court did give the jury a limiting instruction. In its instructions to the jury, the court specifically stated:

{¶ 81} "Evidence was received that the defendant was convicted of murder and aggravated robbery, both felonies under the laws of the state of Ohio. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity or in accordance with a character.

{¶ 82} "If you find that the defendant was convicted of murder and aggravated robbery, you may consider that evidence only for the purpose of testing the defendant's credibility or believability and the weight to be given his testimony. It cannot be considered for any other purpose."

{¶ 83} The trial court explicitly instructed the jury that it was to use the evidence of appellant's prior crimes only in considering his credibility and not for proving appellant's character. Furthermore, the evidence of appellant's guilt was immense. Seven police officers testified that appellant shot at them from the Cadillac. The specific limiting instruction, coupled with the overwhelming evidence of appellant's guilt, leads to the conclusion that any error the trial court

may have made in permitting the prosecutor to question appellant as to whether he was a murderer and a robber was harmless.

{¶ 84} Accordingly, appellant's third assignment of error is without merit.

{¶ 85} For the reasons stated above, appellant's convictions are hereby affirmed. His sentence on the felonious assault counts is likewise affirmed. His sentence on the firearm specifications is reversed. Appellant's sentence is hereby modified to reflect that his firearm specifications will be served concurrently with one another. Thus, appellant's aggregate sentence is 75 years.

Judgment accordingly.

DeGenaro, P.J., and Waite, J., concur.