OPINION *Page 2 
{¶ 1} Defendant-appellant Jumal Edwards appeals from his jury conviction and sentence rendered in the Mahoning County Common Pleas Court for one count of aggravated robbery with a firearm specification, three counts of felonious assault with firearm specifications, and four counts of complicity to commit felonious assault with firearm specifications. Four issues are raised in this appeal. The first issue is whether the police identification of Edwards was prejudicially suggestive when the officers were only shown one picture, that of Edwards, and asked whether he was one of the men involved in the assaults against them. The second issue is whether the firearm specifications for the three convictions of felonious assault and the firearm specifications for the four convictions of complicity to commit felonious assault should merge for sentencing purposes. The last two issues deal with whether the trial court's imposition of maximum and consecutive sentences was in error. For the reasons expressed below, the decision of the trial court as to appellant's conviction is affirmed. However, as to the order of consecutive sentences for the firearm specification for felonious assault and complicity to commit felonious assault, that decision is reversed because those firearm specifications should have merged. The sentence is modified to reflect that Edwards' firearm specifications for felonious assault and complicity to commit felonious assault will be served concurrently with each other. Thus, Edwards aggregate sentence is 67 years.
 STATEMENT OF THE FACTS {¶ 2} Around 11:00 a.m. on July 1, 2005, Althea Robinson was working at Mt. Zion Baptist Church as a secretary when a man, later identified as Jumal Edwards, entered the church and told Robinson that his name was "Jumal" and asked her to pray with him because his brother had just recently been killed. (Tr. 250). After they had finished praying together, Edwards left but then returned and asked Robinson if he could use the phone, which he did, and then he proceeded to use the restroom. (Tr. 252-254). Upon returning from the restroom, Edwards pointed a gun at her and demanded money and the keys to her car. (Tr. 254-255). Robinson gave him the keys to her car, a white and burgundy Cadillac Fleetwood, but told him she did not have any money. (Tr. 255). Edwards then pulled the wires out of the phone, thereby disengaging it, and left. (Tr. 256). After he was gone, Robinson went into the pastor's *Page 3 
office and called the police. Officer Lopez, of the Youngstown Police Department (YPD), responded and took a report from Robinson.
 {¶ 3} After Officer Lopez took the report, he broadcasted over the Youngstown police radio the information that a man identifying himself as "Jumal" whose brother had recently been killed robbed a woman taking her white and burgundy Cadillac. (Tr. 283). Detective-Sergeant Kelty heard the broadcast and speculated that the man named "Jumal" was Jumal Edwards; he reached this conclusion from the description of the man and the information that his brother was recently killed. (Tr. 283, 639). Edwards' name was then broadcast over the police radio as the man involved in the robbery at Mt. Zion Baptist Church.
 {¶ 4} Shortly after the robbery occurred, Officer Michael Marciano, who was canvassing the east side of Youngstown in an unmarked car looking for Duniek Christian because of felony warrants, saw the Cadillac being driven by Christian. (Tr. 302-304). He observed three other black males in the car. (Tr. 304). Because he was alone in the car he did not attempt to pull it over, instead he radioed for more units to assist. (Tr. 306). He then lost sight of the car.
 {¶ 5} The Cadillac was next spotted by Sergeant William Ross driving in a marked car without a partner. (Tr. 321-324). He proceeded to follow the car, and Detective-Sergeants Mike Lambert and Ramon Cox, in an unmarked car, joined the pursuit. (Tr. 324, 397). At that point they attempted to initiate a stop. Sergeant Ross indicated that the Cadillac did not stop and instead proceeded to crash into Detective-Sergeants Lambert and Cox's car. Following the crash, the Cadillac continued fleeing and the front passenger began firing shots at Sergeant Ross and Detective-Sergeants Lambert and Cox' cars. (Tr. 329). Eventually, the back seat passengers in the Cadillac also began shooting. The officers continued their pursuit of the Cadillac.
 {¶ 6} Two other YPD vehicles joined in the pursuit, one car contained Officers Dave Wilson and Brian Voitus and the other car contained Officers Greg Mullennex and Chad Zubal. (Tr. 493-494, 512-513, 542, 573-574). These officers were also shot at by the Cadillac, however, they only observed the rear seat passengers shooting at them, not the front seat passenger. (Tr. 495, 516, 547, 574).
 {¶ 7} The car chase ended at the intersection of Pearl and Valley Streets, where the occupants of the Cadillac "bailed" out of the car. (Tr. 407-408, 479-481). When the occupants of the Cadillac got out of the car, the rear seat driver's side *Page 4 
passenger, identified as Craig Franklin, shot suppressant fire at the police officers. (Tr. 335, 408, 479). Then, all of the occupants fled on foot into a wooded area. (Tr. 407-408, 481). A search for the occupants of the Cadillac began at that time, however, they could not be found.
 {¶ 8} During the search for the occupants of the Cadillac, Sergeant Ross, Detective-Sergeants Lambert and Cox, and Officers Voitus, Mullennex and Zubal identified Edwards as the front passenger of the car. (Tr. 375, 4-03, 462, 521, 549, 578-579).
 {¶ 9} The following day (July 2, 2005), Robinson viewed a picture lineup and identified the man that robbed her as Jumal Edwards. (Tr. 267-268, 271). Also, fingerprint evidence from the phone confirmed that Edwards had used the phone in Robinson's office.
 {¶ 10} Edwards was then found, arrested and charged with seven counts of felonious assault, violations of R.C. 2903.11(A)(2)(D), first degree felonies, all seven counts had firearm specifications, violations of R.C. 2941.146(A); and one count of aggravated robbery, a violation of R.C. 2911.01(A)(1)(C), a first degree felony, which also contained a firearm specification, a violation of R.C. 2941.145(A). 08/11/05 Indictment. Following a jury trial, Edwards was found guilty of three counts of felonious assault, four counts of complicity to commit felonious assault, and one count of aggravated robbery. The jury also found him guilty of all firearm specifications attached to those offenses. The trial court sentenced him to a total of 97 years. He received seven years for each of the three felonious assault convictions and on each of the four complicity to commit felonious assault convictions. These sentences were ordered to be served consecutively. He also was sentenced to five years for each of the firearm specification convictions attached to these seven convictions. Likewise, these sentences were ordered to be served consecutive to each other and consecutive to the felonious assault and complicity to commit felonious assault convictions. As to the aggravated robbery conviction, he received 10 years plus three years for the firearm specification. Those sentences were ordered to be served consecutive to each other and consecutive to all other sentences.
 FIRST ASSIGNMENT OF ERROR *Page 5 {¶ 11} "EDWARDS' DUE PROCESS RIGHTS WERE VIOLATED AS A RESULT OF THE STATE'S USE OF UNDULY AND PREJUDICIALLY SUGGESTIVE OUT-OF-COURT IDENTIFICATION PROCEDURES."
 {¶ 12} Under this assignment of error, Edwards argues that the trial court's refusal to suppress the officers' identification of him was in error; he contends the state used an unduly suggestive identification procedure. He explains that on the day of the car chase, after it had occurred, the police officers were only shown one picture, that of Edwards, and asked if he was an individual in the car; they were not shown a proper photo lineup.
 {¶ 13} During the suppression hearing, Officer Ross testified that he was shown pictures of possible suspects that were involved in the chase and shooting and that this was done at the scene. (Suppression Tr. 17). A picture of Edwards was in the pictures he looked at and he was able to identify him as one of the people in the Cadillac. (Suppression Tr. 18). He explained that the pictures he was shown were all of people involved in the incident; there were no pictures of people not involved in the incident. (Suppression Tr. 38). He indicated that when the suspects bailed out of the car he was able to get a good look at Edwards' face. (Suppression Tr. 19). The identification was made about 20 minutes to a half hour after the chase ended. (Suppression Tr. 19).
 {¶ 14} Detective-Sergeant Lambert testified that he did not know who Edwards was prior to the shooting, but identified him from a picture that was circulated after the incident. (Suppression Tr. 166).
 {¶ 15} Officers Voitus, Zubal and Mullennex testified that they had a picture of Edwards prior to the incident and after the incident they were able to identify him as the front passenger. (Suppression Tr. 235, 241, 251).
 {¶ 16} Officers Voitus and Mullennex admitted that they heard Edwards' name over the radio but they testified that the identification was based mostly on their seeing him at the scene. (Suppression Tr. 235, 259).
 {¶ 17} The major indication among the officers was that there was no collaboration between them in making the identification. (Officers Zubal, Voitus, and Ross Suppression Tr. 220, 235, 242).
 {¶ 18} After hearing this testimony, the trial court denied the motion to suppress. An appellate court's standard of review with respect to a motion to *Page 6 
suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. State v.Winand (1996), 116 Ohio App.3d 286, 288. If there is competent and credible evidence supporting the trial court's findings, then we, as the reviewing court, independently determine as a matter of law whether the trial court met the applicable legal standard. State v. Williams (1993),86 Ohio App.3d 37, 41.
 {¶ 19} The legal standard applicable to look at in this instance is identification procedures. The Ohio Supreme Court has explained, regarding identification procedures, the following:
 {¶ 20} "The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state.' State v.Brown (1988), 38 Ohio St.3d 305, 310. Thus, `[w]hen a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. (Emphasis added.)' State v.Murphy (2001), 91 Ohio St.3d 516, 534, quoting State v. Waddy (1992),63 Ohio St.3d 424, 438. We have previously recounted those factors to be considered: `(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.'State v. Broom (1988), 40 Ohio St.3d 277, 284, citing Manson v.Brathwaite (1977), 432 U.S. 98, 114." State v. Gross, 97 Ohio St.3d 121,2002-Ohio-5524, ¶ 19.
 {¶ 21} In Gross, the two eye witnesses were individually shown the alleged perpetrator of the crime, Gross. Each witness saw Gross standing between two police officers near the scene of the crime. Each positively identified him. While the court held that the identification procedure was suggestive, it did not find reversible error because the identification did not create "a very substantial likelihood of irreparable misidentification." Id. at ¶ 24, citing Manson v.Brathwaite (1977), 432 U.S. 98, 105.
 {¶ 22} The same can be said here; the officers who identified Edwards testified that they had the opportunity to view him at the time of the crime and indicated at which point in time during the chase that they were able to get a good look at him. Some testified that they got a good look at him when he exited the car, while others *Page 7 
indicated that it was when he was hanging out the passenger side window shooting at them. Each officer stated that they were positive it was Edwards and that the identification was not unduly suggestive. The testimony also established that the identification occurred 20 to 30 minutes after the shooting and chase. The only one of theManson factors that is non-existent in this case is that there was no description made of Edwards prior to the officers identifying him as the front passenger of the Cadillac.
 {¶ 23} When all the above is considered, we cannot find reversible error. Any argument to the contrary is meritless especially in the case where police officers personally identify the subject. They are trained to be observant of not only their surroundings but of the people they are pursuing. Given their position and training, they differ from lay persons in identifying suspects in this given situation. Furthermore, some of these officers were out that day looking specifically for Edwards and had a picture of him in the car. Therefore, even though his name was identified on the radio prior to or while the incident was occurring, there is no substantial likelihood of misidentification in this case. This assignment of error lacks merit.
 SECOND ASSIGNMENT OF ERROR {¶ 24} "THE TRIAL COURT ERRED WHEN IT IMPOSED SEVEN CONSECUTIVE FIVE-YEAR TERMS FOR GUN SPECIFICATIONS ARISING OUT OF A SINGLE CRIMINAL VENTURE."
 {¶ 25} At sentencing, Edwards asserted that the firearm specifications for the felonious assault and complicity to commit felonious assault convictions required merger. He argued that the firearm specifications for those offenses should be merged and he should only face one five year sentence for those firearm specifications. The trial court, however, did not agree with his argument and ordered the five year sentence for each of the felonious assault and complicity to commit felonious assault convictions to be served consecutively; therefore, the trial court did not merge the firearm specifications and thus, Edwards received a 35 year sentence for those firearm specifications. On appeal, Edwards maintains the argument he made at sentencing — that firearm specifications for the felonious assault and complicity to commit felonious assault convictions should have merged and he should only have received a five year sentence for those convictions. *Page 8 
 {¶ 26} The firearm specifications in this instance are found under R.C. 2941.146(A) and mandate a five year sentence. R.C. 2929.14(D)(1)(c) further dictates that a court "shall not impose more than one additional prison term on an offender under division (D)(1)(c) of this section for felonies committed as part of the same act or transaction." Thus, if the felonious assault and complicity to commit felonious assault crimes were committed as part of the "same act or transaction", then the trial court erred in ordering the sentences for those firearm specifications to be served consecutively.
 {¶ 27} The Ohio Supreme Court had defined "transaction" as a "series of continuous acts bound together by time, space and purpose, and directed toward a single objective." State v. Wills (1994),69 Ohio St.3d 690, 691; State v. Moore, 161 Ohio App.3d 778, 2005-Ohio-3311, ¶ 37.
 {¶ 28} Here, we have felonious assault and complicity to commit felonious assault that occurred during a police pursuit when Edwards and/or his accomplices shot at the police cars which contained seven officers. In Moore, we held that while the presence of multiple victims could mean multiple criminal objectives, "the factual context of the crime must support" the conclusion that there was multiple purposes.161 Ohio App.3d 778, 2005-Ohio-3311, ¶ 48. In that case, two victims were sitting in a car when Moore ran up to the car and pointed a gun at the driver and demanded money from each of the victims. We found that the 90 second robbery of the two victims did not show that there was any purpose other than to rob the passengers of the car. Thus, we found that the trial court could only impose one prison term for the gun specifications. Id.
 {¶ 29} Consequently, even though there are seven different victims in the case at hand this does not mean that there were seven different criminal objectives. In fact, the major objective was to keep the police from stopping and apprehending them. Three of the men in the Cadillac had outstanding felony warrants and the police were looking for them. While Edwards was not one of the men with a felony warrant, the police testified that they were additionally looking for him in response to something else that had occurred in Youngstown. Thus, the manner of this chase and shooting indicates that the objective was to keep the occupants of the Cadillac from being apprehended. The shootings were also clearly bound by space and time as they did not travel very far once the shooting began and it only lasted approximately a minute. *Page 9 
 {¶ 30} Likewise, the fact that there is felonious assault and complicity to commit felonious assault does not necessarily result in two different objectives. In Moore, where there was complicity to commit rape and rape, we found that the firearm specifications for those crimes merged. Here, the acts of felonious assault and complicity to commit felonious assault could be deemed to be part of the same criminal transaction. See, id. at ¶ 53. The complicity to commit felonious assault occurred at the same time and part of the same transaction as the felonious assault. Detective-Sergeant Lambert testified that both Edwards and the rear passengers of the Cadillac were shooting at them at the same time. (Tr. 404).
 {¶ 31} Furthermore, recently we reviewed the conviction of Edwards' co-defendant Craig Franklin on this same issue. State v. Franklin, 7th Dist. No. 07MA158, 2008-Ohio-4811, ¶ 21. We stated:
 {¶ 32} "In this case, there is no question that appellant's acts of shooting at the seven officers were bound together by time and space. This case involved a single police pursuit involving the Cadillac and four police vehicles. Appellant and two others in the Cadillac opened fire on the police vehicles as the police vehicles pursued the Cadillac. Furthermore, appellant acted with a single purpose and objective in shooting at the police vehicles: to elude the police and escape apprehension." Id. at ¶ 21.
 {¶ 33} At oral argument, the state argued that the firearm specifications should merge into two five year gun specification sentences. It contended that there were two different objectives, one was shooting at the police officers while driving, and the other was for the suppressant fire that was shot when the car came to a stop. This argument was not made in the state's brief (in the brief it argued that merger should not occur for any of the seven counts). Regardless, it is noted that Craig Franklin, Edwards' co-defendant, shot the suppressant fire, not Edwards. When this court reviewed Franklin's merger argument, we did not indicate that there were two objectives, one for the shooting at the police from the moving car and one for the suppressant fire, even though there was sufficient testimony showing that Franklin did both. See id. Furthermore, given the close space and time between the shooting from the car and the suppressant fire (as stated above the whole occurrence only lasted approximately one minute), we do not find that there were different objectives. The single objective was to escape apprehension, the suppressant fire by Franklin, in this instance, was used to let his co-defendants, which included Edwards', escape *Page 10 
apprehension. Thus, we find no argument with the state's revised argument that was made only at oral argument.
 {¶ 34} In conclusion, considering all the above, the firearm specifications for the felonious assault and complicity to commit felonious assault required merger. Thus, instead of seven five year sentences to be served consecutively to each other, Edwards should have received only one five year sentence. This assignment of error has merit.
 THIRD ASSIGNMENT OF ERROR {¶ 35} "THE TRIAL COURT VIOLATED EDWARDS' SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT IMPOSED A MAXIMUM TERM OF IMPRISONMENT AND WHEN IT REQUIRED ALL OF THE TERMS IMPOSED TO BE SERVED CONSECUTIVELY."
 {¶ 36} Edwards argues that the imposition of maximum consecutive sentences violated his substantive due process rights. He admits that the sentence was in compliance with State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. He contends that the Foster remedy of severing the unconstitutional portions of Senate Bill 2 (Ohio's felony sentencing scheme) deprives defendants of substantive procedural safeguards that the General Assembly enacted in Senate Bill 2. These procedural safeguards, according to Edwards, were the mandatory sentencing presumption of minimum and/or concurrent sentences if certain findings were not made. Edwards contends that the Foster remedy violates the United States Supreme Court's decision in Hicks v. Oklahoma (1980),447 U.S. 343.
 {¶ 37} The Fourth District Court of Appeals has recently addressed this exact argument in State v. Montgomery, 4th Dist. No. 07CA858,2008-Ohio-4753. It explained:
 {¶ 38} "Nonetheless, Montgomery relies on Hicks v. Oklahoma (1980),447 U.S. 343, for the proposition that, at the time he committed his crimes, Senate Bill 2 created a liberty interest in the statutory presumption that the sentences imposed would consist of a minimum term of imprisonment served concurrent to each other. Montgomery's reliance is misplaced. *Page 11 
 {¶ 39} "In Hicks, the trial court instructed the jury that if it found the defendant guilty, it must sentence him to 40-years imprisonment under the habitual offender statute. The jury found the defendant guilty and imposed the mandatory 40-year term. Between the defendant's sentencing and his appeal, the Oklahoma Court of Criminal Appeals struck down this provision of the habitual offender statute. On appeal, Hicks sought to have his sentence set aside in light of the unconstitutionality of the provision mandating a sentence of 40-years. The Court of Criminal Appeals affirmed his sentence, concluding that the defendant suffered no prejudice because the sentence handed down was within the range that could have been imposed for his offense. The Supreme Court of the United States reversed. Noting that the defendant had `a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion,' the court concluded that the judgment of the Court of Criminal Appeals `denied the [defendant] the jury sentence to which he was entitled under state law, simply on the frail conjecture that a jury might have imposed a sentence equally as harsh as that mandated by the invalid habitual offender provision.' Id. at 346.
 {¶ 40} "In Hicks, then, the defendant had an absolute statutory right to have the jury set his term of imprisonment, a right that was impaired by the failure of the jury to know that it could hand down a sentence less than 40-years imprisonment. In contrast, Montgomery had no entitlement to minimum, less-than-maximum, or concurrent sentences, either at the time he committed his offense or at the time the court entered his sentence. As we have previously explained,
 {¶ 41} "`[t]he law before Foster never mandated imposition of minimum sentences on offenders who had not previously served a prison term, as appellant asks us to do here. By demanding application of a presumption in favor of a minimum sentence, but not allowing any means by which the presumption can be overcome, "appellant essentially seeks the benefit of a state of law that never existed."'
 {¶ 42} "State v. Hardesty, Pickaway App. No. 07CA2, 2007-Ohio-3889, at ¶ 12, quoting State v. Rosado, Cuyahoga App. No. 88504, 2007-Ohio-2782, ¶ 7, quoting in turn State v. Paynter, 5th Dist. No. CT2006-0034,2006-Ohio-5542, at ¶ 39. Because the presumption against maximum and consecutive sentences could be rebutted, the maximum and minimum terms of imprisonment remained the same before and after Foster. State v.VanHoose, Pike App. No. 07CA765, 2008-Ohio-112, at ¶ 26. Thus, *Page 12 
Montgomery has not been deprived of a liberty interest by the trial court's application of the Foster remedy in sentencing him. SeeState v. Torok, Ashtabula App. Nos. 2007-A-0001 2007-A-0002,2008-Ohio-732, at ¶ 53-56 (rejecting the argument that Foster deprived defendants of a liberty interest in the presumption in favor of minimum, concurrent sentences)." Id. at ¶ 23-25. See, also, State v. Yopp, 11th Dist. No. 2006-A-0042, 2007-Ohio-3848, ¶ 31-37.
 {¶ 43} This reasoning is persuasive and is adopted as our own. Accordingly, this assignment of error lacks merit.
 FOURTH ASSIGNMENT OF ERROR {¶ 44} "THE TRIAL COURT ERRED BY IMPOSING MAXIMUM, CONSECUTIVE PRISON TERMS OF IMPRISONMENT."
 {¶ 45} Under this assignment of error, Edwards argues that theFoster remedy violates the prohibition against ex post facto laws because it changes the presumptive sentence, i.e. the presumption of a minimum and concurrent sentence was severed from the felony statute. This argument is somewhat similar to the argument made in assignment of error number three, but instead of arguing a due process violation, Edwards argues an ex post facto violation.
 {¶ 46} As Edwards points out, this argument has been rejected by this court in State v. Hawkins, 7th Dist. No. 07JE14, 2008-Ohio-1529, ¶ 22-28
(citing our previous holdings in State v. Palmer, 7th Dist. No. 06JE20,2007-Ohio-1572, ¶ 75; State v. Harris, 7th Dist. No. 06JE36,2007-Ohio-3173, ¶ 15-21 and State v. Balwanz, 7th Dist. No. 07BE20,2007-Ohio-5041, ¶ 9-19). In Hawkins, we explained that the removal of the presumptions for minimum and concurrent sentences was not a violation of the prohibition against ex post facto laws because it did not constitute a "judicial enlargement" of the possible sentence; a presumption is only a presumption, it is not a guarantee. Id. at ¶ 27. Furthermore, we explained that the sentencing ranges set forth in R.C. 2929.14(A) did not change. Id. at ¶ 27. Thus, Foster did not destroy a substantial right because offenders were only entitled to expect sentences within that range, not to expect a minimum or concurrent sentence. Id. at ¶ 28.
 {¶ 47} As there are no new arguments presented in this appeal, we rely on our previous holdings (Hawkins, Palmer, Harris and Balwanz) and find no merit with this assignment of error.
 CONCLUSION *Page 13 {¶ 48} For the foregoing reasons, the decision of the trial court as to appellant's conviction is affirmed. However, as to the order of consecutive sentences for the firearm specification for felonious assault and complicity to commit felonious assault, that decision is reversed because those firearm specifications should have merged. The sentence is modified to reflect that Edwards' firearm specifications for felonious assault and complicity to commit felonious assault will be served concurrently with each other. Thus, Edwards' aggregate sentence is 67 years, not 97 years.
Donofrio, J., concurs.
DeGenaro, J., concurs. *Page 1